Yates v. Kinney.

WILLIAM J. YATES, APPELLANT, v. MARTIN KINNEY
AND P. C. CASEY, APPELLEES.

1. **Landlord and Tenant**: TENANT HOLDING OVER. Where
a lessee of agricultural lands on shares for the term of one year
holds over for another year by the consent of the landlord no dif-
ferent or other contract as to the terms of the lease having been
made, in an action for rent the law will imply an agreement to
hold for the year upon the terms of the prior lease.

2. ———: MORTGAGE OF CROP BY TENANT. In such case the ten-
ant may mortgage his interest in the crop raised without the
consent of the lessor, and the mortgagee will hold the title of
the lessee to the mortgaged property, but subject to all the rights
of the lessor, and such mortgage will be no violation of his
rights.

3. **Referee**: PRACTICE. A conclusion of law of a referee, even
if erroneous, upon an immaterial or unimportant question in
the case, will not vitiate his report or require it to be set aside
by the court to which it is returned, if the findings and con-
clusions are in other respects correct.

APPEAL from Fillmore county. Heard below before MORRIS, J., on exceptions to report of W. C. Sloan, referee.

*Billings & Donisthorpe* and *Ryan Brothers*, for appellant, cited: *Leland v. Sprague*, 28 Vt., 746. *Ponder v. Rhea*, 32 Ark., 435. *Chase v. McDonnell*, 24 Ill., 236. *Harrison v. Ricks*, 71 N. C., 11. Bingham Sales, 180.

*John P. Maule*, for appellee Kinney, cited: Taylor's Landlord and Tenant, 8th ed., § 58. *Schuyler v. Smith*, 51 N. Y., 313. *Poessenecker v. Weatherby*, 16 Neb., 95.

*J. H. Rushton*, for appellee Carey, cited: Jones' Chattel Mortgages, §§ 141, 143. *Arques v. Wasson*, 51 Cal., 620. *Butt v. Ellett*, 19 Wall., 544. *Robinson v. Kruse*, 29 Ark., 575.

REESE, J.

This was an action in equity to restrain the defendant Kinney, a tenant of plaintiff, and defendant Carey, a mortgagee, by chattel mortgage of the crops, from committing waste and appropriating to their own use the crops grown on the land of plaintiff during the year 1884 by the cultivation of defendant Kinney.

It appears from the pleadings and evidence that Kinney was a tenant of plaintiff during the year 1883 under a written lease, of which the following is a copy:

"This indenture made this 26th day of November, 1882, W. J. Yates, party of the first part, and Martin A. Kinney, party of the second part, witnesseth: that the said party of the first part in consideration of the covenants of the said party of the second part hereinafter set forth do by these presents lease to the said party of the second part the following described property, to-wit:

" The north $\frac{1}{2}$ of section 30, township six (6), range two (2) west, all of the broke land except the north-west 40 in timber.

"To have and to hold the same to the said party of the second part from the 6th day of November, 1882, to the 26th day of December, 1883. And the said party of the second part, in consideration of the leasing the premises as above set forth, covenants and agrees with the party of the first part to pay said party of the first part as rent for the same the sum of —— dollars, payable as follows, to-wit:

" One-third of all the grain that is raised on the above land—the small grain in the half-bushel any place on the farm that the party of the first part may ask, the corn to be husked and delivered on the farm any place that the party of the first part may direct. The crop is considered the property of the first party until it is divided, and it is further agreed between the parties that the corn is to be husked by the 25th day of December, 1883, and the small grain to be threshed as soon as it is fit.

" The said party of the second part further covenants with the said party of the first part that at the expiration of the time mentioned in this lease, peaceable possession of the said premises shall be given to the said party of the first part in as good condition as they are now, the usual wear, inevitable accidents, and loss by fire excepted, and that upon the non-payment of the whole or any portion of the said rent at the time when the same is above promised to be paid, the said party of the first part may, at election, either distrain for said rent due or declare this lease at an end and recover possession as if the same was held by forcible detainer, the said party of the second part hereby waiving any notice of such election or any demand for the possession of said premises and any demand for the payment of said rent or any installment thereof. And it is further covenanted and agreed between the parties aforesaid that if, at the expiration of the term hereby created, the said lessee shall re-

main in possession of said premises or any part thereof, he shall be considered and treated as a tenant at sufferance of said party of the first part at the monthly rental of ——. The covenants herein shall extend to and be binding upon the heirs, executors, and administrators of the parties to this lease.

" Witness the hands and seals of the parties aforesaid.

"W. J. YATES. [Seal.]

"MARTIN E. KINNEY. [Seal.]"

It is also undisputed that defendant retained possession and cultivated the land during the year 1884.

Plaintiff alleged in his petition that on the 25th day of March, 1884, and while defendant was in possession of the land, a new contract of lease was entered into, verbally, by which it was agreed that for the use of that part of the farm on which a corn crop was to be raised the defendant was to pay 1,950 bushels of corn, to be husked and cribbed; and for that part of the land upon which small grain was grown he was to receive one-third of the product, delivered in the bushel on the farm; but that it was inconvenient to execute the written lease at that time, and it was to be written and signed afterwards; and when presented to Kinney about the first of July, 1884, he refused to sign it. It is alleged that Kinney had executed mortgages to Carey and others upon his undivided interest in the crop to secure near eight hundred dollars of indebtedness, and that Kinney was gathering the corn and converting it to his own use; that he had a large number of hogs running at large in the grain, committing great waste and irreparable damage; that he was insolvent; that he had failed to cultivate the land as required by the contract, by which the farm was damaged and the crops deficient; that he had failed to cut and care for a portion of the small grain grown on the land; had torn down and converted certain buildings standing thereon; had used fruit to a large amount in value which had been reserved to plaintiff; that stock of various

kinds was running at large on the land injuring the trees and shrubbery as well as the crops, and that unless restrained he would continue to waste and destroy the crops, etc. It is further alleged that Carey, unless restrained, will take possession and convert the mortgaged property under the terms of his mortgage. Prayer for injunction against both defendants and for judgment for $347.00 damages and costs against Kinney, and decree for his portion of the crop as against both defendants.

Kinney answered, denying all the allegations of the petition as to waste and destruction or conversion of the crops or other property; sets up his lease for the year 1883, under the contract hereinbefore set out, and alleging that during the existence of the lease of 1883, and while in possession of the land under the same, he rented the land for another year, and that under and by virtue of said second agreement he continued upon and had possession of the farm, putting in and cultivating the crops, etc.; that he did not sign or agree to sign the contract of lease set out in plaintiff's petition, and that it was the agreement between them that the conditions and terms of the lease for 1883 were the conditions and terms under which he was to farm and cultivate the land during the year 1884, and no other, the lease of 1883 being extended for another year. The execution of the mortgage to Carey on his interest in the crops is admitted.

Carey answered, admitting the execution of the mortgage and asking that his interest in the portion of the crop covered thereby be protected, etc. The reply was a general denial.

The cause was referred to a referee for findings of fact and conclusions of law. The referee took the testimony, and reported his findings as follows:

"FINDINGS OF FACT.

"1st. That on the 26th day of November, 1882, the plaintiff, William J. Yates, leased in writing the north

half of section 30, township 6, range 2 west, in Fillmore county, to defendant Martin Kinney, for the term of one year from the said 26th day of November, 1882.

"2d. That by the terms of said lease defendant Kinney was to pay as rent to plaintiff one-third of all grain raised on said farm, the small grain to be delivered on said farm any place the plaintiff might direct, in the half bushel, and the corn to be husked and delivered any place on said farm plaintiff might require it to be delivered.

"3d. That defendant entered upon the said land and farmed the same for the year 1883, under and by virtue of said lease.

"4th. That during the last of August or first of September, 1883, the plaintiff and defendant had a conversation concerning defendant having said land for the year 1884, and that it was then and there agreed between plaintiff and defendant Kinney that defendant could have the said place for the next year, to-wit, 1884, and that no terms were then agreed upon.

"5th. That defendant Kinney remained on said land and farmed the same for the year 1884.

"6th. I find that on the 25th day of March, 1884, plaintiff requested defendant Kinney to come to his house in Geneva, that plaintiff wanted to make a change in the lease, and that defendant Kinney went to the house of plaintiff and the proposed change was talked over and discussed, and that no change in the terms of the lease or new lease was then consummated; and I further find no consideration was proposed to be given defendant for the proposed new lease.

"7th. I find that plaintiff drew up a lease embodying the terms proposed by him on the said 25th day of March, 1884, and afterward, to-wit, on the 5th day of July, 1884, plaintiff presented the said lease to said defendant to sign, which said defendant refused to do, and that said lease so presented is not signed by plaintiff.

"8th. I find that one-third of all grain raised on said land has been delivered to said plaintiff or set apart to him for the year 1884, except one-third of twenty acres of oats.

"9th. I find that defendant was prevented from harvesting said oats by the extreme wet weather, and I further find defendant used due diligence in attempting to harvest the same, and that the said oats would average about thirty bushels to the acre, and that defendant's share of the same would have been about 200 bushels, had the same been harvested.

"10th. I find neither at the time of the filing of the petition, nor at any time since the filing thereof, nor before the filing thereof, has defendant permitted his hogs or any stock of any kind to run at large on said farm.

"11th. I find that no damage is found to have been done to the crops, the orchard, the meadow, or any other property of plaintiff, or any property in which plaintiff has any interest, by stock or by reason of stock of defendant running at large.

"12th. I find that at the time of the filing of this petition the defendant Martin Kinney was not converting the whole of said crop to his own use, or any more of said crop than belonged to him as his share of the crop.

"13th. I find there is no evidence in the record to show that defendant Kinney is insolvent.

"14th. I find that twelve acres of said farm was fresh broken prairie, and that the same was not rotted and was untillable, and by reason thereof defendant failed to cultivate the same.

"15th. I find that there is no evidence to sustain the allegation that the defendant has torn down, destroyed, or burnt up any stable or part thereof, or permitted the same to be done.

"16th. I find that the defendant Martin Kinney has not used, destroyed, or converted to his own use any of the fruit grown on the farm for the year 1884.

"17th. I find that defendant Kinney has done no waste on said farm or permitted none to be done, and that no waste was being committed at the time of the filing of the petition in this case.

"18th. I find that on the 22d day of March, 1884, the defendant made, executed, and delivered to P. C. Carey, one of the defendants herein, a chattel mortgage on two-thirds of the crop raised on the said farm for the year 1884, to secure the sum of $686.90.

"19th. I find that on the 31st day of May, 1884, defendant Kinney made, executed, and delivered to defendant P. C. Carey a chattel mortgage to secure the sum of $106.50."

## "CONCLUSIONS OF LAW.

"I. The defendant Kinney is holding over after the expiration of the lease of November 26th, 1882, and under and by virtue of which he farmed the same land for the year 1883, with the knowledge and consent of plaintiff.

"II. In the absence of any agreement as to terms of rental, his holding will be governed by and controlled by the terms of the lease for the previous year.

"III. Having permitted defendant Kinney to occupy said premises under an agreement that he could have the place for the year 1884, and without changing the terms of said lease for the previous year at the time such agreement was made, plaintiff cannot impose on the defendant other terms more burdensome without a new consideration therefor.

"IV. The oats having been destroyed by inevitable accident, defendant Kinney cannot be held responsible therefor.

"V. The defendant P. C. Carey has a lien on said two-thirds of the crops raised by defendant Kinney for the sum of $686.90 and the sum of $106.50 secured by his respective mortgages.

" VI.   There were no grounds for suing out an injunction in this cause, and the same should be dissolved.

" VII.   That this bill should be dismissed at the cost of plaintiff.   All of which is respectfully submitted.

"W. C. SLOAN, Referee."

Upon the findings and conclusions being filed in court, the plaintiff filed his exceptions thereto as follows:

"The plaintiff excepts to the findings of law and of fact by the referee, for the following reasons:

"1st.   In the sixth finding of fact by the referee he finds that on March 25th, 1884, no new lease was then and there consummated by and between plaintiff and defendant, and that there was no consideration proposed to be given defendant for the proposed change or new lease, when in fact the record which the referee has made of the testimony of this case shows that the terms of rental of the land in question for the year 1884 were agreed upon, and said evidence also shows that plaintiff and defendant also agreed to reduce the evidence of their contract to writing on or shortly after March 25th, 1884.

"2d.   The referee in his eighth finding of fact says, that one-third of all the grain raised by defendant in the year 1884 has been delivered or set apart to plaintiff, when in fact the evidence taken by the referee shows that the testimony of one of defendant's witnesses, and also by defendant, that a part of the corn has not been delivered or set apart to plaintiff in any way.

"3d.   The ninth finding of fact by the referee is, that defendant was prevented from harvesting the oats because of wet weather, when the testimony of defendant is, that he harvested and threshed some of said oats and they were nice and plump, and that he stopped cutting said oats because he thought they were too green; and the testimony of defendant's witness Porter is, that he had been cutting with a header right along up to a certain day when he at-

tempted to cut the oats in question and that the oats were then dead ripe—then the evidence shows that after that the rain spoiled the oats.

"4th. The tenth and eleventh findings of fact by the referee show that no damage to property, orchard, or anything else of plaintiff, by stock, has been proven in the trial of this case, when the evidence of damage to the property of plaintiff is in record made by referee and undisputed.

"5th. The twelfth finding of fact by the referee is, that the defendant was only taking such part of the crop as was his at the time of the filing of the petition, when the evidence of both plaintiff and defendant shows that the whole of the crop was the property of the plaintiff until it was divided, and the evidence of defendant is, he had sold two-thirds of it to P. C. Carey by chattel mortgage, and that a portion was being gathered and fed there is no dispute.

"6th. The thirteenth finding of fact by the referee, that twelve acres of the said farm was fresh broken prairie and untillable, is not supported by sufficient evidence; the evidence showing that part of the same has been plowed or backset by defendant in the fall of 1883, and that it was broken in the year 1883.

"7th. The fifteenth finding of fact by the referee is not sustained by the evidence; the referee finds that defendant has not converted any of the fruit in question to his own use, when defendant swears that he did take part of the same."

Plaintiff objects and excepts to the conclusions of law by the referee for the following reasons:

"1st. That the first conclusion of law in which the referee finds that as a matter of fact the holding of the defendant of the lands in question was with the knowledge and consent of plaintiff, which fact is nowhere proven by the evidence.

"2d. The third conclusion of law by the referee, that because the defendant occupied the premises under an arrangement made August or September, 1883, that he could

have the land, in 1884, and no terms being then agreed upon, that after August or September, 1883, a new contract could not be made without a new consideration, or as near as I can understand the said conclusion, it seems to hold that because plaintiff, in August or September, 1883, told defendant that he could have the land in question for 1884, and agreed upon the terms at that time, that they cannot afterwards fix and agree upon terms, because the law has presumed at some time or other that because no terms were agreed upon they would be the same as for the previous year, and the conclusion as based upon the findings of fact and the other conclusions of law, would seem to hold a tenancy at will or for years could not be changed into a tenancy for a specified time or term.

"3d.   The fourth conclusion of law by the referee being founded and based on an erroneous finding of fact is not applicable.

"4th.   The sixth conclusion of law by the referee, that there were no grounds for suing out the injunction in this case, is not based on correct findings of fact, the facts claimed by both the plaintiff and defendant are that the whole of the crop was the property of plaintiff, and the undisputed evidence is that defendant was using and converting part of said crop to himself, and the evidence of defendant shows that he had sold and transferred two-thirds of said crop and the right of possession thereof to P. C. Carey, which was a violation of the rights of plaintiff, and would cause great and irreparable injury to plaintiff."

The exceptions were overruled and the report confirmed, the temporary injunction was dissolved and the cause dismissed at plaintiff's cost.   The cause is brought to this court for review by appeal.

There are ten assignments of error which are:

"I.   The referee erred in finding an express lease created by the conversation defendant claims he had with plaintiff in the latter part of August or first of September.

" II.   The referee erred in finding as a fact that defendant Kinney under the evidence was not insolvent.

" III.   The referee erred in finding that no damage was done the crop by defendant's stock running at large.

" IV.   The referee erred in finding that the mortgages executed to Carey were no violation of the property rights of plaintiff in the grain.

" V.   The referee erred in finding that a new contract of lease could not be made in March, 1884, without a new consideration.

" VI.   The referee erred in finding there were no grounds for suing out the injunction herein.

" VII.   The referee erred in recommending that the injunction be dissolved.

" VIII.   The court erred in rendering judgment in accordance with the findings and recommendations of the referee.

" IX.   The court erred in overruling plaintiffs several exceptions to the report of the referee.

" X.   The court erred in not making perpetual the injunction herein granted, upon both the referee's report and the evidence submitted."

It is not deemed necessary to notice all these assignments of error in their order, but we must be content to say generally, as to the second and third, that we have carefully read all the testimony submitted by plaintiff in his abstract, which is doubtless correct, and find that there was sufficient to sustain these findings of fact.

As to the first assignment, there was testimony from which the referee could find that prior to the expiration of the first lease the parties made an agreement that Kinney should have the land for the year 1884, beginning at the expiration of the lease of 1883—November 26—and ending November 26, 1884.   That Kinney did fall plowing in 1883 for the next year's crop, hauled out manure, put up hay, and in the spring of 1884 sowed his wheat and oats.

During this time no suggestion was made by plaintiff that he desired the possession of the property nor that the possession of Kinney was not entirely satisfactory to him. He does not claim to have approached Kinney upon the subject until the 25th of March, 1884, four months after the expiration of the prior lease. Up to that time Kinney insists he was holding under the terms of the prior lease. Plaintiff does not claim that any other contract or agreement had been made. He had never demanded the possession of the premises nor given notice to Kinney to quit.

In *Schuyler v. Smith*, 51 N. Y., 309, the court says: "The law is too well settled to be disputed that where a tenant holds over after the expiration of his term, the law will imply an agreement to hold for a year upon the terms of a prior lease," citing authorities.

In Taylor's Landlord and Tenant, sec. 58, it is said: "When a landlord suffers the tenant to remain in possession after the expiration of the original tenancy, or lets in a tenant under a void lease, and receives rent, thereby establishing a new tenancy from year to year, the law presumes the holding to be upon the terms of the original demise subject to the same rent and to all the covenants contained in the original lease, so far at least as they are applicable to the new condition of things," citing a number of cases. This action being one for the collection of rent and not one in which the right of possession is drawn in question, it seems clear that the decision of the referee upon that point was correct, there being sufficient evidence as to the facts to sustain it.

The question presented by the 4th assignment of error has been virtually decided by this court in *Dworak v. Graves*, 16 Neb., 706, in which it was held that a tenant might assign his lease or sell his share of the crop raised upon the leased premises without the consent of the lessor, unless prohibited by the terms of the lease, and that such assignment or sale would carry to the assignee or purchaser the

rights of the lessee under the contract or lease. It would logically follow that the same rights or interests might be mortgaged. But it is insisted that, as by the terms of the lease, the crop is considered the property of plaintiff until it is divided, a different rule would have to be applied, and that no such transfer or mortgage could be made which would not violate the property rights of plaintiff. It is evident that Kinney had some interest in the crops. The fact that the extent of that interest depended upon his compliance with the terms of his lease would not deprive him of the right to sell or mortgage it. By the terms of the mortgage if by no other means of knowledge, Carey had notice that Kinney's interest was an undivided one and he was charged with notice of the rights of plaintiff. He could take no higher or greater tittle than Kinney had, and could assert no right as against plaintiff that Kinney had not.

The 5th assignment of error, perhaps, refers to the third conclusion of law as found by the referee in connection with the sixth finding of fact. The finding of the referee is substantially that defendant Kinney was, on the 25th of March, 1884, holding over under the lease of 1883, by virtue of his agreement and possession, and that this being the case, there being no change in the terms of the lease, the plaintiff could not impose on the defendant more burdensome terms, to which he had not agreed, without a new consideration therefor. But suppose the conclusion was as claimed by plaintiff. It would not follow that the report must for that reason be set aside, even if erroneous. The finding of the referee as to the facts was, that " no change of the terms of the lease was  *  *  consummated" on the 25th day of March, 1884, and that when the new lease was presented to Kinney for his signature he refused to sign it. Therefore the rights of the parties were unchanged, and the question of consideration becomes an unimportant element in the case.,

As the sixth, seventh, eighth, ninth, and tenth conclu-

sions of law would properly follow, or result from the prior findings which we have held to be correct, they need not be discussed here.

It follows that the decision and decree of the district court was correct.    It is therefore affirmed.

DECREE AFFIRMED.

THE other judges concur.