## SWENSON v. LAIRD et al.

(Circuit Court of Appeals, Eighth Circuit. September 20, 1926.)

No. 7221.

1. **Landlord and tenant ⬅═5(1)—Lease held not cropper contract, but to create relation of landlord and tenant.**

A lease of farm land, requiring the lessee to pay as rent one-half the crops raised, *held* not a cropper contract, under the law of Nebraska, but to create the relation of landlord and tenant between the parties.

2. **Chattel mortgages ⬅═7, 12—Provision of farm lease giving landlord lien on all crops to secure any indebtedness to him held chattel mortgage, and void as to crops not in esse.**

Provision of a farm lease, inter alia, that title to all crops shall remain in the landlord until any indebtedness to him from the tenant is paid, *held* in the nature of a chattel mortgage, and void under the law of Nebraska as to crops of subsequent years, and particularly as to indebtedness not then in existence and having no relation to the farming operations.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

In the matter of Gerhard H. Schriefer, bankrupt; Fred C. Laird, trustee. From an order denying his claim to a lien, Samuel A. Swenson appeals. Affirmed.

A. C. R. Swenson, of Omaha, Neb. (W. C. Cull, of Oakland, Neb., on the brief), for appellant.

S. S. Sidner and Earl J. Lee, both of Fremont, Neb., for appellee Dodge County Bank of Hooper, Neb.

Before SANBORN, STONE, and KENYON, Circuit Judges.

KENYON, Circuit Judge. Gerhard H. Schriefer (hereinafter designated the bankrupt) was adjudged a bankrupt in the District Court of the United States for the District of Nebraska, Omaha Division, in February, 1924. Appellant filed claim in the bankruptcy court for the sum of $520.83, arising partly from indebtedness evidenced by two certain promissory notes, of date July 12, 1920, and May 13, 1921, respectively, given to him by the bankrupt, but principally by reason of a payment by him of a certain note of bankrupt, of date May 27, 1921, upon which appellant was surety, and which he paid May 5, 1924. October 2, 1919, appellant leased to bankrupt by written lease for a term extending from March 1, 1920, to February 28, 1921, the southwest quarter of section 25, township 19, range 7 east of the sixth P. M., in Dodge county, Neb. The rent to be paid was a portion of the crop raised. This lease was filed in the office of the county clerk of Dodge county, Neb., on August 17, 1923. Upon the expiration of the term therein provided, no new lease was entered into; but the bankrupt held over year by year, and was in possession of the premises when the bankruptcy proceeding was commenced in February, 1924. The lease contained this provision:

"It is expressly agreed and understood by and between the parties hereto that the title and ownership of all swine, cattle, sheep, or other live stock, except work horses and mules, which may be owned or kept on said premises, as also crops raised on said premises, or grain or feed stored on said premises, shall be and remain in said party of the first part absolutely until all claims held by the party of the first part against the party of the second part, together with 8 per cent. interes thereon, shall have been fully paid; such claims may be represented either by note or book account and shall draw interest from their several dates."

Appellant's contention is that the one-half of the proceeds of the corn crop of 1923 raised upon the land covered by the lease of October 2, 1919, should by reason of this provision of the lease be applied to the payment of his claim of $520.83, instead of being applied to the claim of appellee, Dodge County Bank of Hooper (hereinafter designated as the bank). Appellee bank claims the fund arising from the sale of said corn crop by virtue of the following facts:

February 16, 1922, the bankrupt executed a chattel mortgage to said bank on his interest in the crops raised on appellant's land as security for two promissory notes, one for $1,-500 and one for $740, payable August 2, 1922, given by bankrupt to said bank. Another mortgage was given by the bankrupt to the bank September 24, 1923, upon his interest in the crops of 1923 raised on said land, to secure a note of $2,650 to the Dodge County Bank, payable December 11, 1923, which note included the indebtedness evidenced by the two notes secured by the former mortgage. This mortgage was duly filed in the office of the county clerk of Dodge county, Neb., September 25, 1923. There has been paid thereon the sum of $1,337.

Under these facts the question before the trial court to determine was whether appellant or appellee bank was entitled to bankrupt's interest in the proceeds of the corn raised on the leased land in the year 1923. The matter was referred to the referee, who made findings of fact and law, his conclusions being (a) that the lease did not reserve in appellant the title to the crops raised upon the land in the year 1923; (b) that the relationship between appellant and bankrupt was one of landlord and tenant only; (c) that the part of the crop the bankrupt was to give the landlord for the premises was rent; (d) that the lease could not be construed as providing for anything more than a lien of appellant upon the tenant's share of the crop; (e) that

the second chattel mortgage to the bank was given upon the bankrupt's part of the crop after it had been planted and was growing, and that the lien of the bank was a valid one; (f) that the claim of appellant under the lease of October 2, 1919, to the bankrupt's interest in the crops grown in 1923, was ineffectual, for the reason that the lease was in the nature of a chattel mortgage, and attempted to create a lien upon property not in esse.

The claim of appellant to any part of the bankrupt's share of the proceeds of the corn crop of 1923, as against the bankrupt, was denied, and said bank was held to be entitled to said proceeds. The court approved and affirmed upon petition for review this decision of the referee, and from this action of the court the appeal is taken.

It must be borne in mind that the indebtedness of the bankrupt to appellant is not shown by the record to have any connection with the rent or the farming operations, and no such contention is made. Appellant's claim, therefore, is based on the theory that the provision of section 8 of the lease (hereinbefore set out) created a reservation in him of title to crops grown three years thereafter, and gave to him a right to take such crops to pay debts not in existence at the time the lease was executed, and having no relationship with the farming operations on the land rented or any connection incidental or otherwise with the rent. Whether or not it is legally possible to make a lease, under the laws of Nebraska and the decisions of its courts, which would sustain this theory, we need not determine, for we are satisfied this lease cannot be construed as reserving in appellant title to crops raised upon the land.

[1] The seventh paragraph of the lease states that Schriefer agrees to pay as rent for such premises one-half of all crops of every description raised thereon. It also provides in the eighth paragraph that appellant, if he deem it necessary, may at the cost and expense of Schriefer employ men and teams to go upon the premises, cut the weeds, cultivate the crops, and do what is necessary to save them before they are in the granaries, the cost thereof to be a lien upon Schriefer's share of the crops. These provisions are absolutely inconsistent with the theory that the bankrupt, Schriefer, did not have title to one-half of all the crops grown. Whatever refinement of reasoning may be indulged in, the consideration of all phases and provisions of the lease shows that it was intended to create the relationship of landlord and tenant. The bankrupt rented the land, and was to pay as rental a part of the crop. He was a tenant, and

not a cropper, as the term is defined by the Supreme Court of Nebraska. Hansen v. Hansen, 88 Neb. 517, 129 N. W. 982.

[2] This lease attempts to give appellant a lien upon bankrupt's share of the crops as security for the rents, or for claims held by appellant against bankrupt, especially including claims represented by note or book account. It is in the nature of a chattel mortgage on crops not planted. It is well established by the laws of Nebraska that an attempted mortgaging of crops not in existence is invalid.

In Brown v. Neilson et al., 61 Neb. 765, 86 N. W. 498, 54 L. R. A. 328, 87 Am. St. Rep. 525, the court said: "A stipulation in a lease of a farm for a term of years, as follows: 'And it is further expressly agreed and understood by and between the parties hereto that all property of every name, character, and description, belonging to said parties of the second part, that shall be on said premises or brought thereon by said second parties during the term of this lease, shall be holden as security for the payment of the rents above reserved until all be paid, and the same shall be and remain a lien upon the same from year to year until said payments of the rents for said entire term have been fully discharged and paid'—is ineffectual to create a lien, legal or equitable, in favor of the lessor for rents due and in arrears, on the crops grown thereafter on the leased premises and other property not in esse at the time and afterwards brought thereon by the lessee." This case was followed and approved in Thostesen v. Doxsee et al., 78 Neb. 40, 110 N. W. 567.

In State Bank of Gering v. Grover, 110 Neb. 421, 193 N. W. 765, the court said: "A chattel mortgage upon an unplanted crop of beets is ineffectual to create a lien, either legal or equitable, in favor of the mortgagee, until the intervening of some new act, as where the mortgagee takes possession of the crop after it has been planted, and the filing of such chattel mortgage constitutes no notice of a claim of lien." In this case it is said: "The rule is well established in this state that a chattel mortgage upon an unplanted crop, or upon property not in esse, is ineffectual to create a lien, either legal or equitable, in favor of the mortgagee until the intervening of some new act, as where the mortgagee has taken possession of the property after being planted." See, also, Cole v. Kerr, 19 Neb. 553, 26 N. W. 598; Steele v. Ashenfelter, 40 Neb. 770, 59 N. W. 361, 42 Am. St. Rep. 694; Battle Creek Valley Bank v. First Nat. Bank, 62 Neb. 825, 88 N. W. 145, 56 L. R. A. 124.

The leading case relied on by appellant seems to be Sanford v. Modine, 51 Neb. 728, 71 N. W. 740. An examination of that case makes apparent the difference in the facts. That was a cropper's contract. The distinction between a cropper and a tenant has been pointed out in Hansen v. Hansen, 88 Neb. 517, 129 N. W. 982, as follows: "A tenant rents the land and pays for it either in money or a part of the crops, or the equivalent. A cropper farms the land and is paid for his work in a part of the crops. In the one case, the tenant pays for the use of the land with a part of the crops. In the other, the crop belongs to the owner of the land, and he pays for the labor of cultivating with a part of the crop."

We have examined the other cases and text-book authorities cited by counsel for appellant. Nearly all refer to the reservation in a lease of the title to products produced upon the land, for the purpose of securing a landlord for rent. And through the cases and authorities there runs a distinction between reservations for rent and reservations for other indebtedness. For instance in 36 Corpus Juris, § 1442, p. 486, it is said: "Where it is stipulated in a lease that the produce of the demised premises shall be and remain the property of the landlord until the rent is fully paid, the title to the crops does not vest in the tenant until he has paid the rent, and such a provision does not make the instrument a mortgage, and the lien so reserved will take precedence over a chattel mortgage, although the lease is unrecorded."

To the same effect is 16 Ruling Case Law, p. 976, § 489: "It is generally recognized that the parties may by an express provision in the lease confer upon the landlord a lien upon the crops raised upon the demised premises as security for the rent, and an express reservation of title to the crops as security for or until the rent is paid has in numerous instances been given effect."

It is not claimed in this case, as we have before stated, that the attempted reservation of the crops had anything to do with the rent. It was an attempt to create a lien to secure debts other than rent and debts not yet existent. Clearly the most that could be claimed for the lease is that it is in the nature of a chattel mortgage. A chattel mortgage given in 1919 upon crops not grown until 1923 is invalid under the decisions of the Supreme Court of Nebraska, some of which we have heretofore set forth.

We are satisfied the District Court was entirely right in its order and judgment, and the same is affirmed.