## JAMES C. ROBINSON V. ED. STRICKLIN.

FILED FEBRUARY 9, 1905. No. 13,692.

1. **Executory Contract of Sale: TITLE.** A contract whereby A furnishes to B seed corn for the purpose of planting a certain acreage of corn, and whereby B agrees to deliver at the warehouse of A the entire portion of the crop which comes up to certain standards of quality set forth in the contract at a certain price fixed therein is an executory contract, and no title passes to that portion of the crop sold until separation and delivery, even though the contract recites that the title to the crop is in A and that he may enter and take the same if not delivered.

2. **Quaere.** Whether such contract is of any validity in this state as a sale of things not *in esse*, *quære*.

ERROR to the district court for Sarpy county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*James H. Van Dusen,* for plaintiff in error.

*Nelson C. Pratt, John F. Stout* and *E. S. Nickerson,* contra.

LETTON, C.

This is an action in replevin brought in the district court for Sarpy county by James C. Robinson against Ed. Stricklin to recover possession of a quantity of corn grown by the defendant on land in Sarpy county under a contract with the plaintiff. For convenience the parties

will be termed plaintiff and defendant, respectively, as they appeared in the court below. The contract is as follows:

## "SEED CONTRACT.

"This agreement, between Ed. Stricklin, of Gretna, Neb., party of the first part, and J. C. Robinson, of Waterloo, Nebraska, party of the second part, Witnesseth: That the said party of the first part has borrowed and may hereafter borrow, of said party of the second part, the planting stock seeds required to plant the acreage of seeds and corn described below, and agrees to plant same in proper season, and to cultivate in a workmanlike manner; and also agrees to deliver to said party of the second part, at his seed house in Waterloo, Nebraska, the entire merchantable increase thereof, on or before the dates specified below. The party of the first part further agrees, that the said seeds and corn shall be delivered in a bright, well cured, marketable condition, the seeds to retain their natural color, and the corn to be free from impure, rotten or bad kernels.

"It is further agreed that if either seed or corn are not delivered in a merchantable condition as specified above, the party of the second part can at once have same put in a proper condition, the expense of same to be deducted from the proceeds of the crop, or at the option of the party of the second part, any part or all of such unmarketable crop can be rejected, both seeds and corn to have germinating qualities, which shall test at least eighty-five per cent. The party of the first part agrees that if, for any reason, the planting stock fails to grow, or insects or elements destroy the plants, he will at once notify the party of the second part, and if in the planting season, he will at once replant, at the direction of the party of the second part.

"The party of the first part furthermore agrees that all right, title, and interest in and to said seed and corn crops in all conditions is, and shall remain in said party of the second part, and authorizes said party of the second part,

if said seed and corn crops are not delivered as agreed above, to enter upon the premises wherever the same may be, and take immediate possession thereof.

"The party of the first part further agrees that no mortgage, bill of sale, or other lien shall be placed on said seed or corn crops, except as may be provided for by special agreements as appears on this contract.

"Upon fulfilment of the above named stipulations by the party of the first part, the party of the second part agrees to pay in cash (after satisfactory tests) to said party of the first part, for his labor and service in planting and attending and delivering said seed and corn crops at the rate per pound or per bushel specified below and in this agreement.

"Said party of the first part also agrees to notify the party of the second part, at least once in two weeks, either in person or by letter, of condition of growth of said seed and corn crops.

| Acres. | Pounds. | Stock. No. | Variety. | Crop. No. | Date of Delivery. | Price. |
|---|---|---|---|---|---|---|

20　Sweet corn, Stowell's evergreen, sorted, not hand picked Jan. 1, 1904, $1.15 per 100 pounds.

Sweet corn.　　　　Jan. 1, 190　　　Per 100 pounds.

45　Field corn, Mercer's Flint 3062 Jan. 1, 1904, 60c per bus. 56 pounds..............

......March 12, 1903.　190　(Signed) ED. STRICKLIN.

"Waterloo, Neb. Mar. 12, 1903, 190

"(Signed) J. C. ROBINSON."

The action is replevin, hence the plaintiff in order to recover, must have been the owner of the property at the time the action was begun. He bases his title to the property upon the terms of the contract, arguing, first, that the seed from which the corn grew was the property of the plaintiff; second, that the defendant was the owner or lessee of the land on which the corn grew; third, that un-

less in law the agreement is void Robinson is the owner of the corn. In support of the contract he argues that it is not one of sale, and does not fall within the rule of contracts for things not *in esse* but that it falls within the rule in *Sanford v. Modine*, 51 Neb. 728, wherein it is held that a lease wherein a cropping tenant agrees that the title to crops grown shall be in the landlord until the crop is divided is valid, and that the title to such crops is in the landlord until division is made.

On the other hand the defendant contends: First, admitting for the sake of the argument, that the contract is a valid one, it is only executory in its character, and title would not pass from the defendant to the plaintiff to the corn grown until some further act had been performed in relation to the same; second, that the contract is void for the reason that no sale can be made of property not in existence.

The contract recites that the defendant has borrowed seeds to plant a certain acreage of corn. That he agrees to plant and cultivate the same properly, and deliver to the plaintiff at his seed house at Waterloo, Nebraska, "the entire merchantable increase" thereof on or before the date specified. That the corn should be delivered in a bright, well cured, marketable condition, free from impure, rotten or bad kernels. That if the corn is not in proper condition the plaintiff can at once have the same put in proper condition at the defendant's expense, or the plaintiff may reject all or any part of such unmarketable crop. That the corn is to have germinating qualities which shall test at least eight-five per cent. The plaintiff agrees to pay in cash, "after satisfactory tests," to defendant for his "labor and service in planting and attending and delivering said corn crop" at the rates specified in the contract.

It will be observed that no specific land upon which the crop was to be grown is mentioned in the contract. That while the defendant was bound by the contract to plant a certain acreage of corn, to cultivate it and to "deliver the

merchantable increase" thereof, the plaintiff was not bound to accept the same or any part of it unless it had germinating qualities which should test at least eighty-five per cent., be delivered in a bright, well cured, marketable condition, and be free from impure, rotten or bad kernels. It is clear that the execution of this contract on the part of the defendant required a separation of the corn crop so that that which failed to germinate to the percentage specified, and the impure, rotten or bad kernels, and those that were not bright and well cured, should be separated from the remainder of the crop, and that it was only that portion of the crop which came up to the standard established in the contract which the plaintiff could, by its terms, be compelled to accept. The plaintiff, by this contract, did not agree to purchase or to pay for all of the corn grown by the defendant from the seed furnished under the contract. If the larger portion of the crop had been deficient in the qualifications required, which under the climatic conditions in this state might well happen in some years, he would have no interest so far in the crop and no right to insist upon its delivery to him.

The general rule is that, where anything remains to be done by either or both parties to a contract of sale, before delivery, either to determine the identity of the thing sold, the quantity, or the price, the contract, until such things are done, is executory and the title does not vest in the purchaser. *Holmes v. Bailey,* 16 Neb. 300.

It is true that the contract recites, and the plaintiff argues, that the payment to the defendant is to be made for his labor and services in planting and attending the crops, but since the evidence shows the plaintiff did not furnish the land upon which the crop was to be grown, and that it was the intention of the parties that it was to be grown upon land leased by the defendant, the contract failed to recite the truth. He was to be paid not for labor alone, but for that which embodies both labor and the energy of the soil and elements, a certain portion of the

crop itself. Taken as a whole, the contract is a contract of sale of a certain portion of crops yet to be planted, the portion sold to be identified by means of a certain standard set forth therein. In order to identify the portion sold, the measure and standard specified in the contract must be applied, and it would be impossible to determine to what extent the plaintiff would be liable under the contract to take and pay for the crop until this had been done. Manifestly, the contract was executory in its character. It was not the sale of the entire mass of a crop to be grown upon a certain specified tract of land which has been held by some courts to be an executed contract, and to pass title to the crop, but it was in effect a sale of a certain portion of a crop yet to be raised which was indistinguishable, and not capable of identification until separated from the mass. See Am. & Eng. Ency. Law (2d ed.), note 5, p. 1042. Further than this, the contract provides for a sale of property not *in esse*. The seed was in being at that time but that was all. It is different from a case wherein a landlord rents certain specific land to a tenant upon which the tenant agrees to raise a crop, and that the title to the crop should remain in the landlord until after division. Such a case was *Sanford v. Modine*, 51 Neb. 728, cited by plaintiff, from which this case is easily distinguishable. The contract herein recites that the defendant has borrowed the seed, but that is as far as any potentiality of the crop was in existence. Authorities differ as to how far a sale may be made of an article which is not yet in existence. The general doctrine is that, if the property has a potential existence—such, for example, as the natural increase or product of property which is already in the hands of the seller—it may be sold or mortgaged.

In the case of *Brown v. Neilson*, 61 Neb. 765, 54 L. R. A. 328, a full and exhaustive discussion is made by Judge HOLCOMB of the question as to whether a lien may be created upon property not in existence by the terms of a lease which apparently in terms granted such lien. All

the cases in this state bearing upon the point under consideration are examined and compared with the decisions in other states and in England, citing and quoting with approval *Cole v. Kerr,* 19 Neb. 553. He says in the opinion: "The natural and logical deduction to be made from the authorities above cited is that the agreement under which the plaintiffs claim, being executory in its nature and not fully executed, is insufficient to pass any legal interest in, or equitable lien on the property on which the lien is claimed, because not then in existence. * * * The contract in the present instance is not the result of a mistake or failure of the parties to correctly express their intentions in the stipulation creating the alleged lien. It amounts only to a mere license, which to become effective for the purpose of creating a valid lien requires a change of possession of the property when or after acquired. Until a new act intervenes, no sufficient title passes to the lessor which he can enforce at law or in equity, nor is he entitled to relief by the application of any recognized rule of equity, under the doctrine of specific performance." See also *Battle Creek Valley Bank v. First Nat. Bank,* 62 Neb. 825, wherein it is held that a mortgage upon the increase of domestic animals to be thereafter begotten is only an agreement for a lien invalid without possession given by the mortgagor. *Forsyth Mfg. Co. v. Castlen,* 112 Ga. 199, 81 Am. St. 28, and monographic note; *Long v. Hines,* 40 Kan. 216, 16 Pac. 339; *Townsend Brick & Contracting Co. v. Allen,* 62 Kan. 311, 52 L. R. A. 323.

A reexamination of the cases upon this point would be fruitless. We are satisfied with the principles thus laid down which have been the rule of this court ever since *Lanphere v. Lowe,* 3 Neb. 131, decided in 1873. The contract in the instant case attempted to give the plaintiff title to corn which was not in existence either actually or potentially and which after it was grown required to be separated and distinguished from the entire crop before the vendee could ascertain that portion which he was entitled to receive and pay for.

If the plaintiff had refused to accept the corn and the defendant had brought an action for damages for the breach of the contract he could not have recovered for the whole of the crop, but, if at all, merely for that portion which possessed the qualifications required, and to ascertain this, required a separation and division from the mass. Assuming that the contract is valid as an executory contract of sale of part of the crop, which we do not decide, the plaintiff can only recover by proving title in himself to the specific property replevied. Before his title to any of the crop could be completed it was necessary that it should be separated and set apart to him. This not having been done, his title never ripened into a perfect one. We conclude therefore that the contract was executory in its nature, and that the title to the property could not pass to the plaintiff until separated and delivered to him by the defendant. This not having been done, the title never passed, and he is not entitled to recover in this action.

We recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.