J. C. ROBINSON SEED COMPANY, APPELLEE, v. JOHN HAMILTON ET AL., APPELLANTS.

FILED JUNE 10, 1910. No. 16,077.

1. **Crops: CONTRACT: CONSTRUCTION.** One who grows for and agrees to deliver a certain crop to the owner or possessor of real estate for an agreed price per hundred pounds, under a written contract by which it is expressly provided "that nothing herein contained shall be construed to make the instrument a lease of the premises between the parties hereto, or divest the owner of his title to the crop," is a mere cropper, and acquires no title to any portion of the crop, and cannot sell or mortgage the same or any part of it, without the consent of the owner.

2. ———: RIGHT TO SELL: BURDEN OF PROOF. If the cropper claims the right to sell a portion of the crop by reason of a division thereof, or an oral agreement varying the terms of his written contract, the burden is upon him to establish such right by competent evidence.

3. ———: ———: EVIDENCE. Evidence examined, and found insuffi-
cient to require the submission of the question of a division of
the crop or an oral modification of the written contract to the
jury.

4. ———: REPLEVIN: DEMAND AND TENDER. Where the cropper has
wrongfully delivered a part of the crop to another than the
owner thereof, such owner may maintain replevin therefor with-
out demand, or tender of the cropper's agreed compensation.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*John C. Wharton* and *Byron G. Burbank,* for appellants.

*Baxter & Van Dusen, contra.*

BARNES, J.

Action of replevin in the district court for Douglas
county to recover the possession of 30,000 pounds of
Stowell's evergreen sweet corn. The plaintiff had the
verdict and judgment, and the defendants have appealed.

It appears that at all times hereinafter mentioned Mary
T. Robinson was the owner of a farm situated near Water-
loo, in Douglas county, Nebraska, known as the "River-
side farm"; that for the year 1907 she leased this land to
the plaintiff, the J. C. Robinson Seed Company, which
was engaged in raising and selling corn and other seeds
at wholesale; that the plaintiff, in conducting its busi-
ness, contracted with various retail dealers throughout
the United States certain quantities of seeds of many
kinds at stipulated prices; that, in order to supply such
seeds and make sure of filling its orders, it entered into
contracts with divers persons to grow for it different
varieties of corn and vine seeds for certain agreed com-
pensations, and to that end in the year 1907 it entered
into a written contract with the defendant Hamilton to
raise 50 acres, more or less, of Stowell's evergreen sweet
corn for it on its Riverside farm above mentioned, for
which the seed company was to pay him $1.20 per hun-
dred pounds when delivered to it at its seed house, or

f. o. b. the cars at Waterloo, Nebraska. As an additional compensation Hamilton was to have the use of the house and buildings situated on the farm, and was to take good care of the same, cut the weeds on the roadside, and generally care for the premises in a careful and. up-to-date manner. It was also provided that in case the corn, when ready for delivery, should not have a germinating quality of 85 per cent., then the plaintiff had the option to reject it and give three-fifths of it to Hamilton as his compensation, retaining the remaining two-fifths for itself. It was provided that delivery of the corn shelled and in good clean merchantable condition should be made on January 1, 1908, and it was expressly provided that nothing therein contained should be construed to make the instrument a lease of the premises between the parties thereto, or divest the seed company of its title to the crop.

It further appears that defendant Hamilton moved into the house, situated on the farm, and planted about 50 acres of Stowell's evergreen sweet corn thereon, according to the terms of the contract; that he cultivated the same and harvested the crop in due season; that on the 1st day of December, 1907, he mortgaged three-fifths of it to one H. B. Waldron, without plaintiff's knowledge, and shortly afterwards sold the same to the defendant J. C. Hively Seed Company, without either the knowledge or consent of the plaintiff. It also appears, without question, that before the sale to Hively, or the Hively Seed Company, plaintiff, by letter, notified Hively that Hamilton had refused to deliver the corn, that it owned the same, and warned all persons not to purchase it of Hamilton under penalty of being sued for conversion. By the terms of the contract the corn was to be delivered to the plaintiff on the 1st day of January, 1908; that on or about the 12th day of December, 1907, defendant Hamilton shelled and delivered two-fifths of the corn to the plaintiff at its seed house in Waterloo, and at the same time delivered the other three-fifths of it to the J. C. Hively Seed Company by storing it in a barn on the premises of the

father of H. B. Waldron, the person to whom he had executed the chattel mortgage above mentioned; that H. B. Waldron was the cashier of the Citizens Bank of Waterloo, and sold and assigned the mortgage above mentioned to the defendant bank; that on the 17th day of December, 1907, the plaintiff made a demand upon Hamilton for the corn which had been delivered by him to the Hively Seed Company, and immediately commenced this suit, and thereby obtained possession of the corn, which had been stored in Waldron's barn as above stated, under the writ of replevin herein. Upon the trial in the district court, after all of the evidence had been introduced, the plaintiff moved the court to direct a verdict in its favor for the possession of the corn. Its motion was sustained, verdict was directed, was returned accordingly, and judgment was rendered thereon for the plaintiff. This, among other things, is assigned as error.

Defendants' first contention is that Hamilton, who grew the corn in question, and the Robinson Seed Company, could modify the terms of the written contract by a subsequent parol agreement; that they did so modify the contract; that the plaintiff consented to the division of the corn by Hamilton, and agreed to take two-fifths and give him the remaining three-fifths thereof. By this contention defendants admit the validity of the contract, and concede that without its verbal modification the plaintiff was the absolute owner, and entitled to the possession of the corn in controversy. Therefore the principal inquiry is. Does the evidence show or tend to show an agreement between the parties by which the corn was divided, as above stated?

The only testimony upon this point is the evidence of the defendant Hamilton, who testified, in substance, as follows: That just before the 12th day of December, 1907, he met J. C. Robinson, president of the plaintiff seed company, close to Traber's store in Waterloo, Nebraska, and told him he was going to sell his corn and he wanted sacks to deliver his in at the same time. "Q. What did

he say? A. He said he would study over it, to come down the next morning and he would let me know. Q. Did you go down the next morning? A. I came down the next morning, and he asked how many sacks I wanted. Q. What did you tell him? A. I told him it was between 1,200 and 1,500 bushels, and he told one of his men to give me sacks enough to put it in." On cross-examination he testified as follows: "Q. Where did you meet Mr. Robinson? A. In Mr. Traber's store in Waterloo. Q. What was said between you at that time? A. I told Mr. Robinson I was going to sell my share of the corn, and I wanted sacks to deliver his share at the same time. Q. What did Mr. Robinson say to that? A. He told me he would study over it, for me to come down the next morning and he would let me know. Q. Now, have you stated all the conversation? A. No; there was that too— Q. I am speaking about this one—this one in Traber's store. Have you stated all of that? A. Yes, sir. Q. Didn't Mr. Robinson tell you at that time, in substance, that you would get yourself in trouble if you attempted to sell the corn? A. I don't remember anything if he did. Q. Do you say he didn't tell you that? A. I say he didn't, to my knowledge. Q. Not to your knowledge? You knew at that time you had grown the corn under the contract, of course? A. Yes, sir." He further testified that after he had delivered two-fifths of the corn to the seed company and three-fifths of it had been stored in Waldron's barn, he saw Robinson on the street; that Robinson asked him if he had got his two-fifths of the corn delivered, and that he told Robinson he had. "Q. What did he say then? A. I told him I had it all delivered except 265 pounds. Q. What did he say? A. He asked me where it was, I told him it was in Mr. Waldron's barn. Q. What did he say then? A. I said I was going to fetch it to him. He said 'All right.' Q. What did you do, if anything, as a matter of fact? A. I went and got the corn and delivered it. Q. How much? A. 265 pounds. Q. Did you weigh it then? A. Yes, sir. Q. Was it weighed? A.

Yes, sir.  Q. Where was it weighed?  A. In Mr. Wald-
ron's barn."

The foregoing is the substance of the evidence in regard
to the division of the corn, and it would seem that Ham-
ilton himself doubted its sufficiency, for he testified, in
face of his written contract, that he had rented the farm
for two-fifths of the crop.  It is not disputed that under
ordinary conditions $1.20 per hundred pounds was a fair
price, and a reasonable compensation for raising the kind
of corn in question.  But it appears that about the 1st
of December, 1907, there was reported to be a shortage of
seed sweet corn, and its price advanced to $5 or $6 per
hundred pounds, and it seems clear that this was the rea-
son for Hamilton's refusal to carry out his contract and
deliver all of the crop to the plaintiff.  It was also the
basis of his determination to retain for himself and sell
three-fifths of the plaintiff's corn.  Considering the whole
record, including the fact that before any of the conversa-
tions between Robinson and Hamilton took place relat-
ing to a division of the corn, Hamilton mortgaged three-
fifths of it without the plaintiff's knowledge or consent,
and sold the same to the defendant J. C. Hively Seed
Company, and the further undisputed fact that before
such conversations occurred, if they ever did occur, the
plaintiff had notified the Hively Seed Company, and
others, that Hamilton had refused to deliver the corn, and
warned them not to purchase it, or have anything to do
with it, under penalty of being sued for conversion, it
seems clear that the trial court was right in holding that
the evidence was wholly insufficient to establish a modifi-
cation of the written contract, or a division of the corn
raised by Hamilton under its provisions, and did not err
in directing a verdict for the plaintiff.

It is contended, however, that the corn in question did
not have germinating qualities of at least 85 per cent.,
and therefore did not all belong to the plaintiff.  In or-
der to justify his refusal to deliver it to plaintiff, Hamil-
ton and the Hively Seed Company claim to have made

9

some tests which disclosed that its germinating qualities were about 80 per cent., instead of 85 per cent., but that fact is entirely immaterial to this controversy, because they were thus attempting to exercise an option which did not belong to Hamilton, but could only be exercised by the plaintiff in case it saw fit to reject the corn for that reason. It is true that by the terms of the contract plaintiff had the right to reject the corn in case it failed to possess germinating qualities of 85 per cent., and, instead of paying $1.20 per hundred pounds to Hamilton for raising it, it could have required him to accept three-fifths of it as his compensation, but it is not claimed that the plaintiff ever exercised or attempted to exercise this option; on the other hand, it was satisfied with the germinating qualities of the corn, and stood ready to accept it and pay Hamilton for raising it in accordance with the terms of the written agreement, and of this Hamilton and defendant, the Hively Seed Company, had due notice. Therefore the failure of the corn to show germinating qualities of 85 per cent., if that fact existed, was no excuse for Hamilton's failure to deliver it according to his agreement and on plaintiff's demand therefor, and the case of *Robinson v. Stricklin*, 73 Neb. 242, upon which defendants seem to rely, is not in point, and should not control our judgment in the case at bar.

Defendants also contend that the plaintiff's tender of $1.20 per hundred pounds for raising the corn in question was not kept good, and therefore it could not recover in this action. To this contention it is a sufficient answer to say that no tender was required in order to maintain the action. According to the terms of the contract the corn belonged to the plaintiff, and Hamilton had no right or interest in it which he could convey to another without the consent of the plaintiff. Therefore, if such consent was not given, and we have already held that it was not, plaintiff could, without a tender, maintain replevin to recover its property from any one in whose possession it was found.

It is claimed, on the part of the defendant bank, that the district court erred in excluding its offer to prove that at the time Waldron took the chattel mortgage on the corn in question the plaintiff's contract with Hamilton was not recorded; that Waldron took the mortgage in good faith and without any notice of the plaintiff's rights. A similar question was before the supreme court of Iowa in *Gilman Linseed Oil Co. v. Norton & Worthington*, 89 Ia. 434, 48 Am. St. Rep. 400, and it was there contended that the contract was one which the statute required to be filed; that it was invalid because no record of the same had been made. The court said: "The transfer of title did not depend upon any condition, and the transaction was not, in any sense, a conditional sale of property; and section 1922 of the code, which requires sale, contracts, and leases wherein the transfer of title or ownership of personal property is made to depend upon any condition to be in writing and recorded, to be valid against certain creditors and purchasers without notice, has no application."

It was also contended in that case that the plaintiff was estopped from asserting title, and that contention was disposed of as follows: "It is contended that the plaintiff is estopped to deny the right of Lamar & Co. to sell the seed, for the reason that it had given them the possession and control of it, and the apparent right to treat and dispose of it as their own. The plaintiff did not authorize Lamar & Co. to ship the flax seed to anyone but itself, and it did not know anything of the shipments until after they were made. If it is estopped to claim the seed, it is because Lamar & Co. were buying wheat and other grain, and selling it on their own account. But, in our opinion, that fact alone was insufficient to bind the plaintiff by selling the seed in question. 'The mere possession of chattels, by whatever means acquired, if there be no other evidence of property or authority to sell from the true owner, will not enable the possessor to give good title.'" It follows, of course, that if Hamilton could not

give title to a purchaser by a sale of the property, he could not give a mortgagee any interest in it by executing to him a chattel mortgage. We are therefore of opinion that the court did not err in excluding the evidence offered.

Finally, it is contended by defendant Hively that he was a *bona fide* purchaser of the corn in question, and therefore the plaintiff could not maintain this action against him. What we have heretofore said touching Hamilton's power to deprive the plaintiff of its property by executing a chattel mortgage thereon applies with equal force to this contention of the Hively Seed Company. In addition to this, as we have already seen, before it completed its purchase of the corn Hively received notice from the plaintiff of its ownership of the corn, and a warning not to purchase it or have anything to do with it under penalty of being sued for conversion. So we are of opinion that the Hively Seed Company obtained no right or title to the property as against the plaintiff by the transaction between it and the defendant Hamilton.

From a careful examination of the whole record, we are satisfied that no reversible error was committed by the district court, and its judgment is therefore

AFFIRMED.