FERRY & CO., RESPONDENT, v. FORQUER, APPELLANT.

(No. 4,549.)

(Submitted October 27, 1921. Decided November 21, 1921.)

[202 Pac. 193.]

Conversion—Contracts—Interpretation—Bailment.

Contracts—Interpretation.
1.   A contract must receive such interpretation as will give effect to the intention of the parties at the time of contracting, the intention to be gathered from the entire agreement, its substance rather than its form being controlling.

Bailment—Definition.
2.   A bailment is a delivery of personal property to another in trust upon a contract, express or implied, that the identical thing bailed, or the product of or substitute for that thing, together with the increments, earnings or gains accruing during the period of bailment, shall be redelivered, delivered over or accounted for by the bailee in accordance with the terms of the contract, as where goods or chattels are delivered for the purpose of having something done about them for a reward to be paid by the bailor to the bailee.

Conversion—Crops—Seed Contract—Bailment.
3.   Held, in an action for the conversion of a crop of beans grown and harvested by defendant under a contract which provided that defendant should plant a certain acreage with seed furnished by plaintiff and deliver the crop to the latter, he to receive as full compensation a given price per pound, title to the seed and the crop to be in plaintiff until the crop was rejected for reasons mentioned, when title was to vest in defendant, that the transaction was a bailment and not a sale.

Appeals from District Court, Yellowstone County; A. C. Spencer, Judge.

ACTION by D. M. Ferry & Co. against Claud E. Forquer. From judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Messrs. Shea & Wiggenhorn, for Appellant, submitted a brief; Mr. Thos. F. Shea argued the cause orally.

It is the contention of defendant that the contract does not establish title in plaintiff and that, since the only evidence

_____

2.   Difference between bailment and sale, see notes in 10 Am. Dec. 490; 2 Am. St. Rep. 711; 94 Am. St. Rep. 216.
3.   Contract for crops to be raised as a sale, see note in 14 L. R. A. 233.

on the question of title is contained in the terms of the contract, there has been a failure to establish title and consequently that plaintiff has failed to establish his action. If we are to be guided by this provision alone, there is no question but that the title was in plaintiff. However, whether or not such title was in plaintiff is to be determined by the whole contract and not from any single clause or paragraph. (See *Stockton Sav. & Loan Soc.* v. *Purvis,* 112 Cal. 236, 53 Am. St. Rep. 210, 44 Pac. 561.) We admit that there are some distinctions between that case and the present one. But there is one point in that case that would seem to be determining in the case in question, and that is that under both contracts there is an absolute obligation to pay for the crop. From this, it is a reasonable inference that it was the intention of the parties, notwithstanding the contrary expression of the contract, that the title should pass at the time of the delivery of the seed beans, and under such construction there was no bailment, but rather a sale. (3 R. C. L. 74.)

Under the contract in question the seed beans were transferred to the defendant and he was obliged to pay all the expenses in the growing of the crop and was entitled to all of the increase with the exception that he must return the amount of seeds that had been furnished by plaintiff, and that he must deliver the balance to the plaintiff conditionally upon plaintiff paying him a certain price. But the obligation to return a certain kind or quantity was not absolute, for in the event that plaintiff should reject the beans, then plaintiff was obliged to pay for the same. This in itself would take away from the transaction all of the character of a bailment, as one of the essential elements of bailment is that the property itself or property of a similar kind must be returned. (3 R. C. L. 73.)

A substantially identical contract was held to be a sale in *Robinson* v. *Stricklin,* 73 Neb. 242, 102 N. W. 479. The latter contract stated that the seeds were borrowed, while the contract in question states that the seeds were delivered. In this there can

[61 Mont. 336.]

be no substantial difference. The provision of the contract as set forth in that case particularly analogous to the contract in question is that in both contracts the right is given to the party furnishing the seed to reject the said seeds if they do not come up to a certain standard. Counsel for plaintiff has endeavored to make the distinction that the contract in question provided for the method in which the seeds are to be determined as satisfactory. However, such is not a meritorious distinction, for the reason that even by following such methods the fact still remains that the seed is not identified, and it cannot be determined what seed is to be delivered until such process is followed. If from such method alone it could be determined what amount of seed or grain was to be delivered to plaintiff, there might be some merit to plaintiff's contention that there is a distinction in the two contracts; but, since even with the methods provided it cannot be determined what amount of seed is to be delivered, there still remains the fact that the seed is not identified, and, as is stated in the Northwestern case, no title can pass until the seed is identified. The contract set forth in the Northwestern case does not contain any provisions authorizing the party furnishing the seed to refuse to accept the same. In this respect it is more favorable to the party furnishing the seed than the contract in this case in question. On the question of necessity of identification of the seed to be delivered, see, also, *Adlam* v. *McKnight*, 32 Mont. 349, 80 Pac. 613; *Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212, 9 Am. St. Rep. 199, 18 Pac. 248.

*Messrs. Johnston & Coleman,* for Respondent, submitted a brief; *Mr. H. J. Coleman* argued the cause orally.

The transaction involved was a bailment, not a sale. "Where articles are delivered by one person to another, who is to perform labor upon them, or to manufacture them into other articles for the former, the transaction is a bailment, notwithstanding the articles are to be returned in altered

form." (6 C. J. 1096; *Laflin etc. Powder Co. v. Burkhardt,*
97 U. S. 110, 116, 24 L. Ed. 973, 974 [see, also, Rose's U. S.
Notes]; *Stewart* v. *Stone,* 127 N. Y. 500, 14 L. R. A. 215,
28 N. E. 595; *Sattler* v. *Hallock,* 160 N. Y. 291, 73 Am. St.
Rep. 686, 46 L. R. A. 679, 54 N. E. 667; *Gleason* v. *Beers,*
59 Vt. 581, 59 Am. Rep. 757, 10 Atl. 86; 1 Mechem on
Sales, Chap. II, sec. 19; *Arnott* v. *Kansas Pac. Ry. Co.,* 19
Kan. 95; *Mack* v. *Snell,* 140 N. Y. 193, 37 Am. St. Rep. 534,
35 N. E. 493; *Gilbert* v. *Copeland,* 22 Ga. App. 753, 97 S. E.
251; *Stewart* v. *Sculthorp,* 25 Ont. Rep. 544.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

Early in 1916 the plaintiff delivered to the defendant a
quantity of seed beans to be planted on lands in Yellowstone
county, pursuant to the terms of a letter theretofore written
by the defendant, the material portions of which follow:

"Messrs. D. M. Ferry & Co., Detroit, Michigan.

"I agree, on the terms and conditions stated below, to raise
for you, on lands [describing them]   *   *   *   30 acres Golden
Wax beans, 10 acres Giant Stringless Gr. Pod beans.

"I agree properly to prepare and plant such lands with
stock seed to be furnished by you free on board cars at
Shepherd; to harvest, cure, separate and clean, as well as
possible with ordinary farm machinery, its entire seed prod-
uct, in such manner as to secure the greatest possible return
of seed suitable for seedsman's use; and to sack, and deliver
all the seed to you free on board cars at Shepherd as soon
as the seed can be put in suitable condition, and before
November 30, 1916, without wasting, feeding, selling, reserv-
ing or allowing any portion of the crop of seed furnished to
pass from my possession except as delivered to you. The
stock seed and seed crop produced from it is, and shall remain
your property except as otherwise stated in this contract.

"In order to prevent hybridization and to keep the crop
pure, I agree that during the life of this contract I will not

[61 Mont. 336.]

grow seeds of the same species for any other person, and as far as I am able to prevent it, there shall be no other plants of the same species grown within ten rods of this crop. I will take at all times every reasonable precaution to keep the crop pure and to prevent seed of any chance plants of a different variety or of a stock of the same variety different from that sent me by you becoming mixed with seeds grown under this agreement. You or your agents may at any time enter the field and at your own expense make such examination, selections or rejections as you or they deem desirable for the betterment of the crop for seed. purposes, and you or they shall not be liable for necessary damage, if any, to my crop resulting from such work.

" * * * You may refuse to accept the crop if less than eighty-five per cent (85%) of the seeds are vital, or if in your judgment the crop is in any other respect unfit for seedsman's use and cannot be made fit without an unreasonable amount of cleaning or hand picking. * * * In case you refuse to accept the crop, its title shall vest in me and I agree to reimburse you immediately for stock seed and bags furnished, and for all freight charges," *etc.*

"In consideration of the faithful carrying out of this agreement by me and as full compensation for my services, you are to pay me at the rate of four and one-half cents (4½¢) per pound for the Golden Wax and four and one-fourth cents (4¼¢) per pound for the Giant Stringless Green Pod Beans when delivered on board car in good condition for all seed (in excess of the stock seed furnished me), delivered under this contract and accepted by you; payment to be made immediately upon your acceptance of the seed. No payment is to be made for any seed which you do not consider sufficiently pure, clean and dry for seedsman's use and no credit is to be given for dirt, or for damaged or poor seed which has to be removed. * * * This letter, when accepted by you, shall constitute our contract, and be construed according to Michigan Laws. There are no agreements or understandings

regarding the subject matter of this letter other than expressed above.

"Yours truly,
"CLAUD E. FORQUER."

"Accepted at Detroit, Michigan, this third day of March, 1916.

"D. M. FERRY & CO.,
"By R. H. MOORE."

This action was brought to recover damages for the alleged wrongful conversion by defendant of the crop of beans grown and harvested, and the controversy presents for determination the question: In which of the parties was the title to the property on December 14 when defendant sold and delivered the crop to a third party? The trial court held that title was in the plaintiff, and directed a verdict in its favor. From the judgment entered thereon and from an order denying him a new trial the defendant appealed.

The acceptance of the terms of defendant's letter by the plaintiff completed the contract between the parties, and constituted the entire agreement. From it the answer to the inquiry above must be sought. It is elementary that a contract [1] must receive such interpretation as will give effect to the intention of the parties at the time of contracting (*Quirk v. Rich,* 40 Mont. 552, 107 Pac. 821), and that the intention is to be gathered from the entire agreement (*Stockton Sav. & Loan Soc.* v. *Purvis,* 112 Cal. 236, 53 Am. St. Rep. 210, 44 Pac. 561). It is also a rule of general application that it is the substance of the agreement rather than the form—the spirit rather than the letter—which must control its interpretation. (*Liquid Carbonic Co.* v. *Quick,* 182 Fed. 603, 105 C. C. A. 141.)

Applying these principles to the instrument before us, and [2, 3] there does not appear to be room for a difference of opinion as to the intention of the parties or the character of their transaction. The letter declares that it was the intention that defendant should raise the crop of beans *for the plaintiff,*

and every other provision but adds emphasis to that purpose. It is argued by counsel for defendant that the provision that plaintiff might refuse to accept the crop, or part of it, is altogether inconsistent with the theory that title was in the plaintiff, but not so. The letter declares that "The stock seed and seed crop produced from it is and shall remain your property except as otherwise stated in this contract." The exception is that plaintiff might refuse to accept the crop if less than eighty-five per cent of the beans should prove to be vital, or if the crop should be otherwise unfit for seedsman's use. In other words, title was in the plaintiff until it rejected the crop for either of the reasons mentioned, and then, and not until then, should title vest in the defendant. The defendant wrote: "In case you refuse to accept the crop, its title shall vest in me." The term "vest," as therein employed, means to descend; to take effect; and the parties intended clearly that upon the happening of the contingency indicated, defendant would acquire something which he did not have before. Again, counsel urge that the provision that plaintiff should pay for the crop in any event is at war with the notion that plaintiff was the owner. The fallacy of this argument lies in the assumption that plaintiff was to pay for the crop. The contract does not so provide. The only reference to compensation in the contract is found in the provision for compensation for the services rendered by the defendant, the amount thereof to be computed upon the amount of the crop produced.

There were not present any of the elements of a sale so far as the seed beans were concerned, not the slightest indication that the title was to be transferred or that defendant should pay for such seed. (Secs. 5079, 5080, Rev. Codes.) Neither was the transaction a loan of the seed for use within the meaning of section 5188, Revised Codes, for defendant was to be rewarded for the use to be made of the seed and, furthermore, a loan for use does not transfer title. (Section 5189, Rev. Codes.)

The contract is one of bailment, and title to the seed and the crop produced was in the bailor. A bailment is a delivery of personal property in trust upon a contract, express or implied, that the trust shall be executed faithfully on the part of the bailee. (2 Blackstone's Commentaries, 451; 2 Kent's Commentaries, 558; Story on Bailments, sec. 2.) Some of the early definitions apparently contemplated that the thing bailed should be returned in specie, but the preponderant authority and better reasoning support the rule that upon the termination of the bailment, the identical thing bailed, or the product of or substitute for that thing, together with the increments, earnings, and gains which may have accrued to it during the period of the bailment, must be redelivered, delivered over, or accounted for by the bailee in accordance with the terms of the contract. (6 C. J. 1139.) The principles of the law of bailments were borrowed from the civil law, and were first tersely explained in the early English case of *Coggs* v. *Bernard,* 2 Ld. Raym. 909, 92 Eng. Reprint, 107. In that case Chief Justice Holt classified the different kinds of bailments, and, among other things, said: "The fifth sort is where goods or chattels are delivered to be carried or something is to be done about them for a reward to be paid by the person who delivers them to the bailee who is to do the thing about them." It may be granted that Chief Justice Holt, in thus expounding the common law, did not have in contemplation a seed contract of the character of the one before us, but it is the malleability of the common law, its adaptability to changed conditions, that is its distinguishing characteristic and greatest virtue, and it may be asserted with confidence that the modern law of bailments finds justification in the rules announced in *Coggs* v. *Bernard* in whatever varied form they may be promulgated. In principle, the transaction between the parties to the present action is not different from that involved where the owner of leather delivers it to a manufacturer to be made into shoes (*Mansfield* v. *Converse,* 8 Allen (Mass.), 182); or where the owner of logs delivers

them to a miller to be sawed into lumber (*Gleason* v. *Beers,* 59 Vt. 581, 59 Am. Rep. 757, 10 Atl. 86); or where the owner of milk delivers it to a factory to be made into butter or cheese (*Bank* v. *Schween,* 127 Ill. 573, 11 Am. St. Rep. 174, 20 N. E. 681); or where the owner of live animals delivers them to another to be kept for compensation (*Edgar* v. *Parsell,* 184 Mich. 522, Ann. Cas. 1917A, 1160, 151 N. W. 714; *Robinson* v. *Haas,* 40 Cal. 474; *Simmons* v. *Shaft,* 91 Kan. 553, 138 Pac. 614). In any of these cases the transaction is a bailment, and it is altogether immaterial whether the compensation of the bailee is fixed at a definite sum in money or is a share of the product itself, a share of the net proceeds of the adventure, a share of the increase, or is computed upon the product of the undertaking. (6 C. J. 1096.)

But it is urged by the defendant that the contract in question contemplates that he should do more than merely apply his labor to the property furnished by the plaintiff; that he was required to provide the land, and that the elements in the soil entered into the crop to be grown. This may be conceded, but it does not change the rule. So far as the elements which entered into the growing crop are concerned; aside from the defendant's labor, it may be said in all fairness that the plaintiff furnished the principal part—the seed —and that the elements in the soil were merely accessories. In this respect the case is not distinguishable in principle from that which arises when the owner of a damaged or worn-out vehicle delivers it to a blacksmith to be repaired by the labor and material of the latter (*Gregory* v. *Stryker,* 2 Denio (N. Y.), 628); or when the owner of cloth delivers it to a tailor to be made into a garment, the tailor to furnish the buttons and twist to complete it (Story on Bailments, 8th ed., sec. 423); or when a railway company, the owner of old or worn out rails, delivers them to a rolling mill to be made into new rails by the labor and added material of the mill company (*Arnott* v. *Kansas P. Ry. Co.,* 19 Kan. 95); or where the owner of rough castings delivers them to be manu-

factured into shears, the factory to furnish the blades and do the work (*Mack* v. *Snell,* 140 N. Y. 193, 37 Am. St. Rep. 534, 35 N. E. 493).

A seed contract, in substantially identical terms with the one before us, was considered by the Queen's Bench Division of the High Court of Justice of Ontario in *Stewart* v. *Sculthorp,* 25 Ont. 544, and the transaction held to constitute a bailment of the fifth class enumerated by Chief Justice Holt, in *Coggs* v. *Bernard,* above. And the same result was reached under like circumstances, in *Gilbert* v. *Copeland,* 22 Ga. App. 753, 97 S. E. 251.

Counsel for defendant cite and rely upon the decision in *Robinson* v. *Stricklin,* 73 Neb. 242, 102 N. W. 479, but, though the contract there involved is similar to the one before us, it is apparent that the real character of the transaction was not considered or determined. The court assumed that the contract evidenced a sale or was an agreement for sale and, as between the two, it held that it was of the latter class. The subject "bailments" is not mentioned in the opinion, and apparently was not brought to the attention of the court. In a controversy arising upon a contract like the one here involved, the character of the transaction, whether a bailment, a sale, or a contract for sale, must be determined, and to assume that it belongs to one of two of the classes, excluding the other, is to beg the question. We do not deem the Nebraska case authority opposed to the views we have expressed.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER and GALEN concur.

MR. JUSTICE REYNOLDS, being disqualified, takes no part in the foregoing decision.