[No. 1333-3.    Division Three.    January 6, 1976.]

RACHEL BENHART, *Appellant*, v. HAROLD GORHAM, ET AL, *Respondents.*

*Ronald K. McAdams*, for appellant.

*Minnick & Hayner* and *H. H. Hayner*, for respondents.

McINTURFF, C.J.—This appeal is from a summary judgment denying crop rental on farmland.

Marilda Benhart, deceased, executed a will in 1966 in which she gave her husband, Arthur, a life estate in 800 acres of her separate farmland. The will provided in pertinent part:

> SECOND: I hereby give, devise and bequeath all real property which I may own at the time of my death to my said husband, Arthur W. Benhart, for his life,  . . . subject, however, to the option that I hereby give and bequeath unto Harold Gorham to purchase the real estate for its appraised value at any time within five years after the death of my husband,  . . .

Marilda executed a lease of the farmland to the Gorhams on the same day, which provided in pertinent part:

> TERM: The term of this Lease shall be for ten (10)

years, commencing September 1, 1970 and terminating August 31, 1980.

RENTAL: Lessees agree to pay as rental one-third of all grain crops produced on the premises.

The lessor's share of the grain shall be delivered to a bonded warehouse or public elevator of the Walla Walla Grain Growers.

TITLE TO CROP: The title to the Lessor's share of the crop shall at all times be and remain in the Lessor *from the time of seeding.*

BENEFIT: Except as otherwise herein expressly provided, the covenants and agreements herein contained shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of the parties.

(Italics ours.)

Marilda died before the commencement of the lease term. After her death, Arthur remarried and began to collect the rental when the lease term commenced. In the fall of 1973, another crop was seeded; but Arthur died before the 1974 harvest, and his life estate terminated. After Arthur's death the Gorhams exercised their option to purchase the leased property as provided in Marilda's will, thus taking legal title to the farmland in themselves to the exclusion of the remainderman.

Arthur's second wife, Rachel Benhart, made a demand on the Gorhams for the 1973-74 crop rental, which demand the Gorhams refused, claiming that title to the crop had passed to them along with title to the land, thus negating their obligation to pay. The contention of the Gorhams was upheld by the Superior Court upon cross motions for summary judgment. Rachel Benhart appeals.

As between lessor and lessee, it is the general rule in Washington that title to the crops follows actual possession of the land. Title is in the lessee until the crops are severed and delivered to the lessor as crop rental. The lessor takes title to his share only after harvest.[1] It is equally

---

[1]*Churchhill v. Ackerman,* 22 Wash. 227, 231, 60 P. 406 (1900); *Lynch v. Sprague Roller Mills,* 51 Wash. 535, 538, 99 P. 578 (1909); *Loudon v. Cooper,* 3 Wn.2d 229, 240, 100 P.2d 42 (1940); *In re Estate of Machlied,* 60 Wn.2d 354, 360, 374 P.2d 164 (1962).

well established in our state that this general rule can be varied by contract.[2]

To discover the true intent of the parties, we read the lease as a whole within its four corners, applying the words in their common and ordinary meaning.[3] The lease was to "extend to and be binding upon" Arthur after Marilda's death, giving Arthur title to one-third of the 1973-74 crop "from the time of seeding" in the fall of 1973. The remainderman, and then the Gorhams after exercise of their option to purchase, took title to the land, along with the unsevered crops, subject to Arthur's one-third interest. Because Arthur was seized of one-third of the crop at his death, the one-third interest passed as an asset of his estate.[4]

The Gorhams have argued that it was not Marilda's wish to provide income for Arthur's second wife. This is undoubtedly true. However, it was Marilda's express intent that she should have title to one-third of the crop upon seeding, as should her heir or successor in interest under the lease. That this would ultimately provide income for a second wife is simply an unforeseen result of her intent.

The trial court had before it the uncontested provisions of the will and 1966 lease. Thus, there was no genuine issue of material fact, making summary judgment proper.[5] This left to be determined whether either moving party was entitled to judgment as a matter of law.[6] We find upon the uncontested evidence that the trial court incorrectly concluded that the Gorhams were entitled to judgment, and

---

[2]*Long Island Oyster Co. v. Eagle Oyster Packing Co.*, 22 Wn.2d 322, 325, 156 P.2d 222 (1945); *Lynch v. Sprague Roller Mills*, 51 Wash. 535, 538, 99 P. 578 (1909).

[3]*Wasser & Winters Co. v. Jefferson County*, 84 Wn.2d 597, 599, 528 P.2d 471 (1974); *Pine Corp. v. Richardson*, 12 Wn. App. 459, 469, 530 P.2d 696 (1975); *James S. Black & Co. v. P & R Co.*, 12 Wn. App. 533, 535, 530 P.2d 722 (1975).

[4]RCW 11.04.250.

[5]CR 56(c).

[6]*LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975); *Brannon v. Harmon*, 56 Wn.2d 826, 838, 355 P.2d 792 (1960).

Rachel Benhart was not entitled to judgment, as a matter of law.

The Gorhams have argued that the Washington Principal and Income Act, RCW 11.104 *et seq.*, is controlling, and provides that 1973-74 crop income should pass to them. But to give this 1971 act retrospective application would deny vested rights under the 1966 lease. Based upon the general rule that statutes are presumed to have prospective application only[7] and what appears to be a clear indication by the legislature that the act receive prospective application only,[8] we hold that the act shall be given prospective application only.

Lastly, the Gorhams argue that title reservation in a lessor to the crop serves only to enhance the lessor's remedies when rent is due, but does not vest legal title to crops in the lessor prior to that time, citing *Federal Land Bank v. McCloud*, 52 Idaho 694, 20 P.2d 201 (1933). We disagree. That case simply reiterates the basic rule that the possessor of land is entitled to the crops unless there is a stipulation to the contrary. By contract in *McCloud* legal title to the grain was reserved in the vendor. Similarly, here, the lease varied the general rule by providing that legal title was vested in the lessor "from the time of seeding."

Judgment of the Superior Court is reversed and the case remanded for action consistent with this opinion.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied February 19, 1976.

Review denied by Supreme Court April 23, 1976.

---

[7]*Godfrey v. State*, 84 Wn.2d 959, 961-62, 530 P.2d 630 (1975); *State v. Heath*, 85 Wn.2d 196, 198, 532 P.2d 621 (1975).

[8]House Journal, 42d Legislature (1971) at 747:

"Mr. Charette: 'Representative Julin, if passed, would the effect of this law be to change any trust agreement or either testamentary or *inter vivos* that is now in existence?'

"Mr. Julin: 'No, Mr. Charette, it will not. It is not retrospective in operation, merely prospective.'"