[No. 1522-3.   Division Three.   December 23, 1976.]

THE RUDY-PATRICK COMPANY, *Respondent*, v. DELA COSTA FARMING COMPANY, ET AL, *Defendants*, ROBERT MATHIAS, ET AL, *Appellants*.

*John S. Moore* and *Velikanje, Moore & Shore,* for appellants.

*Terry A. Brooks* and *Brooks & Larson,* for respondent.

GREEN, J.—Plaintiff brought this action for conversion of a seed crop grown and sold by defendants, Robert Mathias and his wife.[1] The trial court found that the plaintiff was

---

[1]Defendants Dela Costa Farming Company, a corporation, and Lewis and Susan Hanke, were dismissed from the action on motion of plaintiff.

the owner of certain Titan alfalfa plants growing on land leased by defendants who converted the 1973 seed crop. Plaintiff's award of damages was measured by the market value of the crop less harvesting costs on the date of conversion. Defendants appeal.

Error is assigned to: (1) the court's findings and conclusion that plaintiff is the owner of the plants and seed crop; and (2) the measure of damages.

On April 26, 1971, The Rudy-Patrick Company entered into a seed production agreement with Dela Costa Farming Company for production of Titan alfalfa seed, a unique variety exclusively owned and marketed by Rudy-Patrick. Mr. Hanke signed the agreement as an officer for Dela Costa. Under this agreement, *inter alia*, Rudy-Patrick was required to supply Dela Costa with foundation Titan alfalfa seed to grow crops during the period 1971 to 1974, inclusive. Dela Costa was required to deliver the annual seed crop exclusively to Rudy-Patrick for an agreed or negotiated rate per pound, and to destroy the plants on the termination date of the agreement. It further provided that title to the foundation seed, the resulting plants, and the annual seed crop would remain in Rudy-Patrick. No legal description of the real property on which the seed was to be planted was contained in the agreement, nor was it recorded.

Mr. and Mrs. Hanke, who with their family were the sole stockholders of Dela Costa, leased approximately 82 acres of their land to Dela Costa for the planting of the Titan alfalfa seed. After a crop failure in 1971, Dela Costa became insolvent and the Hankes terminated this lease. Thereafter, the Hankes leased the land to defendants and gave them a copy of the seed agreement. While defendants admit they had knowledge of the seed agreement, the evidence is conflicting as to whether they acquired such knowledge before or after the signing of the lease. Nonetheless, defendants delivered the 1972 seed crop to another company, whereupon Rudy-Patrick brought a replevin action to recover the crop. By agreed order in that action, Rudy-Patrick, upon

payment of the amount due the grower under the seed agreement, obtained possession of the 1972 seed crop. This order was without prejudice to the rights or claims of the parties in the present action involving the 1973 crop.

In December 1972, the Hankes sold their farmland, including the 82 acres of growing Titan alfalfa, to four corporations doing business as Rattlesnake Farms. Rattlesnake Farms has asserted no claim to the Titan plants or seed crop and is not a party to this action. Mr. Hanke testified that no restrictions or reservations regarding the plants or seed crop were contained in the deed. Defendants continued to lease the 82 acres of Titan alfalfa and acreage from Rattlesnake Farms. The 1973 seed crop from the 82 acres of Titan alfalfa was commingled with uncertified seed from the other acreage and sold as Washington Common for $1 per pound.

Throughout the 1972 and 1973 crop year, Rudy-Patrick, to the knowledge of defendants, continued to assert their claim of ownership to the plants and seed crop. The trial court found that the plants and seed crop were the property of Rudy-Patrick, and that defendants willfully converted the 1973 seed crop.

First, defendants contend the evidence is insufficient to support Rudy-Patrick's ownership of the Titan plants and seed crop, and that the trial court incorrectly applied the law relating to ownership of growing crops. They argue that the forfeiture of the Dela Costa lease and subsequent sale of the real property to Rattlesnake Farms, their lessor, transferred title to the plants and crop, cutting off the rights of Rudy-Patrick. Therefore, defendants argue they are not liable to Rudy-Patrick for conversion of a crop owned by their lessor. We disagree.

To answer defendants' contention that title to the growing crops passed to the Hankes as real property owners by the forfeiture of the Dela Costa lease, and subsequently to Rattlesnake Farms as purchaser of the realty, we must determine the nature of the Titan alfalfa plants and crop. Crops are considered realty in some transactions and per-

sonalty in others. 21 Am. Jur. 2d *Crops* § 3, at 581 (1965); see R. Brown, *The Law of Personal Property* § 17.1, at 589 (3d ed. 1975). Real property may belong to one person and the crops to another, even without actual severance. *See Paik v. Chung*, 123 Wash. 37, 211 P. 729 (1923).[2] Here, as between Dela Costa and Rudy-Patrick, the Titan alfalfa plants and resulting seed crop are personalty owned by Rudy-Patrick as evidenced by the seed production agreement.[3]

■ Defendants argue that the forfeiture of the Dela Costa-Hanke lease transferred title to the growing plants and crop to Hankes as owners of the real property. In *Woody v. Wagner*, 89 Wash. 429, 433, 154 P. 819 (1916), the court said:

The rule is stated in the text of 12 Cyc. 977 as follows:

---

[2] The writers in 21 Am. Jur. 2d *Crops* § 7, at 585 (1965), recognize the same rule: "Even a growing crop is personalty where the nature of the crop, the character of the transaction in which it is involved, and the intention of the parties thereto invest it with the attributes of personalty. It is clear that one person may own the land and another own the crops thereon."

[3] A line of early cases regarding contracts to grow seed have generally held that title to the seed produced remains with the seedsman, based upon the contract language. These cases have interpreted the contracts in question, which contain provisions for reservation of title in the seedsman, and have found that the intent of the parties was a bailment, not a sale, and therefore title to the seed raised is in the bailor (seedsman), and not the grower. *D.M. Ferry & Co. v. Smith*, 36 Idaho 67, 209 P. 1066 (1922); *D.M. Ferry & Co. v. Forquer*, 61 Mont. 336, 202 P. 193, 29 A.L.R. 642 (1921). Further, in *First State Bank of Wiggins v. Simmons*, 91 Colo. 160, 13 P.2d 259 (1932), the court held that the contract between the seed company, retaining title to the seed crop, and the grower was a bailment, not a sale, and thus precluded the grower from giving a valid chattel mortgage on the crop. The court found that no property right to the crop passed to the grower because it was an agreement to raise seed supplied by the seedsman exclusively for him and was not a sale but a bailment; and that one dealing with the grower-bailee did so at his peril and is charged with notice of its real ownership. In *Gilbert v. Copeland*, 22 Ga. App. 753, 97 S.E. 251 (1918), the seedsman under a similar contract was allowed to maintain an action in trover against a third person who purchased the seed crop from the grower because a court recognized title in the seedsman, although not designating it a bailment. *But see Robinson v. Stricklin*, 73 Neb. 242, 102 N.W. 479 (1905); R. Brown, *The Law of Personal Property* § 10.5, at 232 (3d ed. 1975).

> "According to the great weight of authority *crops* so far partake of the nature of realty that in the absence of reservation or exception they *pass by a sale or conveyance of the land* as appurtenant thereto, whether unripe or matured, *so long as there has not been a severance, actual or constructive, of such crops from the land."*
>
> . . .
>
> It is so when the title passes by sale under a foreclosure of a mortgage upon the land, when the mortgagor is the owner and his title to the crop is not impaired by some *leasehold* or contractual interest in some other person. . . . *It is so when the title of a lessee passes back to the lessor by forfeiture of the leasehold interest,* and it has been held that the voluntary surrender of the leasehold interest to the lessor carries a title to unsevered crops even as against a mortgagee of such crop.

(Italics ours.) Here, the ownership of the plants and crop by Rudy-Patrick constitutes a constructive severance from the real property. *See Benhart v. Gorham,* 14 Wn. App. 723, 544 P.2d 141 (1976). Consequently, title to the plants and crop did not pass to Hankes by forfeiture of the Dela Costa lease.

Notwithstanding, defendants further argue that the sale of the real property to Rattlesnake Farms carried title to the plants and defendants are thereby relieved of any obligation to Rudy-Patrick. We disagree. Again, the plants were constructively severed by the seed production agreement. Defendants had notice of that severance and the ownership of the plants by Rudy-Patrick. Thus, as between Rudy-Patrick and the defendants, Rudy-Patrick is the owner of the plants. How this issue would be resolved as between Rudy-Patrick and Rattlesnake Farms is not before us. Moreover, it should be recognized that where there has been a constructive severance of a crop or the rights of a third party to a crop intervene, a conveyance of the real property without reservation does not always transfer title to the crops as a matter of law. *See Groth v. Stillson,* 20 Mich. App. 704, 174 N.W.2d 596 (1970); *Kirby v. First Nat'l Bank,* 136 Wash. 214, 239 P. 556 (1925). We find substantial evidence to support the trial court's findings and conclusion

that Rudy-Patrick is the owner of the Titan plants as between the parties to this action.

Second, defendants contend the trial court erred in its determination of the amount of damages. This determination was predicated upon 28,080 pounds of seed which defendants sold for $1 per pound. The court computed damages on the basis of $28,080 less $2,050, harvesting costs, and entered judgment of $26,030. In effect, it is defendants' position that, instead, the court should have deducted the amount Rudy-Patrick would have been required to pay the grower under the seed agreement. They argue that Rudy-Patrick's ownership of the seed is in effect a limited ownership because of its obligation under the agreement to pay the grower for the seed. We agree.

Rudy-Patrick's right to recover from defendants for conversion is based upon the ownership rights vested in it by the seed agreement. Under that agreement, it is required to pay the grower 35 to 42 cents per pound for the seed depending upon grade, or a negotiated price for it if not within a specified grade. The grower is obligated to pay Rudy-Patrick for the cost of cleaning the seed and for bags. Thus, Rudy-Patrick's converted interest in the seed grown by defendants is the difference between what it would have paid the grower and the highest market price of the seed, *i.e.*, $1 per pound under the evidence presented.

Rudy-Patrick seeks to sustain the court's award based upon *Smith v. Shiflett*, 66 Wn.2d 462, 403 P.2d 364 (1965), and *Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d 879, 289 P.2d 975 (1955), logging cases involving trespass and conversion. In those cases, the owner of the standing timber was allowed to recover from a subsequent innocent converter, who purchased from a willful converter, the highest market value of the timber undiminished by labor and costs incurred by the willful converter. In *Smith v. Shiflett, supra* at 465, the court said:

In an action for conversion, a subsequent converter does not have the right to deduct the value added by the labor and expenditure of the original converter, when the orig-

inal conversion was willful, and this rule applies even though the subsequent converter is an innocent purchaser for value.

Thus, in logging cases, if the willful conversion by the logger is established, the mill would be liable for the value of the timber at the time it acquired possession, and the logger would be liable for treble damages.

Based upon such authority, Rudy-Patrick contends it is entitled to the highest market value for the seed converted undiminished by any amount—including harvesting costs, although it has elected not to claim error for this deduction on appeal. We cannot agree. The principle applied in these cases involves strangers who share no interest with the owner in the property converted.

Here, the grower has a limited interest in the crop to the extent of the payment required by Rudy-Patrick under the seed agreement. Stated another way, the value of Rudy-Patrick's ownership interest is limited by its obligation to pay the grower for the seed less cost of cleaning and bags. As pointed out in C. McCormick, *Damages* § 123, at 464-65 (1935):

> If the plaintiff is not the absolute owner of the chattel, but holds only a limited interest, . . . then, if he sues one as converter who is a stranger to the title, and if the plaintiff was in possession of the chattel when it was converted, the plaintiff may recover the full value of the chattel as if he were the absolute owner. *If*, on the other hand, *the converter is one who himself holds the remaining interest in the chattel, . . . then the plaintiff recovers only the value of his limited interest.*

(Italics ours.) To the same effect, *see Cheesman v. Sathre,* 45 Wn.2d 193, 273 P.2d 500 (1954); *Anstine v. McWilliams,* 24 Wn.2d 230, 163 P.2d 816 (1945); *Bunnell v. Baker,* 104 Cal. App. 313, 285 P. 877 (1930), *rehearing denied,* 286 P. 1090; *Amey v. Augusta Lumber Co.,* 128 Me. 472, 148 A. 687 (1930); *Moore v. Carey Bros. Oil Co.,* 269 S.W. 75, 272 S.W. 440, 39 A.L.R. 1247 (Tex. Comm'n App. 1925). While we have not found a case involving willful conversion of a crop similar to the one at hand and none has been cited to us, we are of the view that the principles summarized in McCor-

mick, *Damages, supra,* and the cases applying those principles are more akin to the issue before us than those relied upon by Rudy-Patrick.

Thus, the award of damages must be reversed and this case remanded for redetermination of the amount. By this decision we do not disturb the court's finding that the market value of the seed converted was $1 per pound or $28,080. However, evidence must be taken to determine the net amount due the grower under the contract. When this amount is determined, it should be deducted from the $28,080. This amount would then reflect the value of Rudy-Patrick's converted ownership interest.

Reversed and remanded for further proceedings in accordance with this opinion.

McINTURFF, C.J., and MUNSON, J., concur.