(April 15, 1922.)

## D. M. FERRY & COMPANY, a Michigan Corporation, Respondent, v. FRANK C. SMITH, Appellant.

[209 Pac. 1066.]

CONTRACTS—CONSTRUCTION OF—INTENTION OF PARTIES—SEED CONTRACT
—BAILMENTS—TITLE TO CROP—FOREIGN CORPORATIONS—ACTIONS BY,
TO PROTECT PROPERTY—CLAIM AND DELIVERY—ACTION NOT BASED
ON BREACH OR VIOLATION OF CONTRACT.

1. A contract is to be construed so as to give effect to the intention of the parties making it.

2. A contract wherein one person agrees to raise a crop of beans from seed furnished by a seed company, providing that the seed and seed crop produced from it should remain the property of the company, that in case the company should refuse to accept the crop for reasons stated title thereto should vest in the grower, and that the latter should receive as full compensation for his services four and one-quarter cents per pound for all seed in excess of the stock seed furnished him when delivered under the contract and accepted by the company, *held*, a contract of bailment and that the company was the owner of the crop.

3. C. S., sec. 4775, has no applicability to an action by a foreign corporation to protect its property lawfully acquired, and such corporation, which has not complied with the provisions of C. S., secs. 4772 and 4773, may sue in the courts of this state to recover possession of personal property, where the suit is not based upon a breach or violation of a contract made in its name or for its use or benefit.

APPEAL from the District Court of the Fourth Judicial District, for Twin Falls County. Hon. William A. Babcock, Judge.

Action in claim and delivery. Judgment for plaintiff. *Affirmed.*

E. M. Wolfe, J. F. Martin and L. A. Wade, for Appellant.

Title to property which is not in existence cannot be reserved from the ownership of seed from which it is expected to be grown, and a contract which attempts to do this is executory. (*Robinson v. Stricklin,* 73 Neb. 242, 102 N. W. 479; *Welter v. Hill,* 65 Minn. 273, 68 N. W. 26; *Farmers Nat. Bank v. Coyner,* 44 Ind. App. 335, 88 N. E. 856; *Barber v. Andrews,* 29 R. I. 51, 69 Atl. 1, 26 L. R. A., N. S., 30; *Flynn v. Dougherty,* 91 Cal. 669, 27 Pac. 1080, 14 L. R. A. 230; *La Vie v. Toose,* 46 Or. 206, 79 Pac. 413; *Sedgwick City Bank v. Pollard,* 8 Kan. App. 34, 54 Pac. 14; *Sexton v. Breshears,* 21 Ida. 333, 121 Pac. 567; *Mark P. Miller Milling Co. v. Butterfield-Elder Implement Co.,* 32 Ida. 265, 181 Pac. 703; *Gilbert v. Coakland,* 22 Ga. 753.)

Plaintiff cannot maintain an action which will indirectly enforce a contract, entered into while plaintiff was doing business in this state without having complied with the laws thereof. (C. S., sec. 4775; *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; *War Eagle Min. Co. v. Dickie,* 14 Ida. 534, 94 Pac. 1034; *Junction Placer Min. Co. v. Reed,* 28 Ida. 219, 153 Pac. 564.)

A contract of this nature comes within the purview of this statute. (*Bonham Nat. Bank v. Grimes,* 18 Ida. 629, 111 Pac. 1078; 9 Fletcher's Cyc. Corporations, 10,081, sec. 5960; *Citizens' Nat. Bank v. Buckhert,* 14 Ala. App. 511, 71 So. 82.)

Sweeley & Sweeley, for Respondent.

This is a contract of bailment and Norris became under it merely a bailee for the purposes therein set forth. (*D. M. Ferry & Co. v. Forquer,* 61 Mont. 336, 202 Pac. 193.)

As the respondent is not seeking in this action to enforce a contract against the appellant the question of whether it was "doing business" or not is immaterial. (*War Eagle Con. Min. Co. v. Dickie,* 14 Ida. 534, 94 Pac. 1034; *Bettilyon Homebuilders Co. v. Philbrick,* 31 Ida. 724, 175 Pac. 958.)

"The provisions of our laws respecting foreign corporations and their designations of agents are applicable only to actions brought for the enforcement of contracts and have no application whatever to actions such as this brought by a foreign corporation to protect its own property." (*Junction Placer Min. Co. v. Reed,* 28 Ida. 219, 153 Pac. 564.)

No one has a right to take property away from a foreign corporation even if the property has been acquired in the transaction of business by the corporation without first complying with the laws of the state where the property is situated. (*St. Louis A. & T. Ry. Co. v. Fire Assn.,* 60 Ark. 225, 30 S. W. 350, 28 L. R. A. 83.)

The statute does not prohibit a foreign corporation from suing to protect personal property within the state. (*Craig v. Leschen Rope Co.,* 38 Colo. 115, 87 Pac. 1143.)

A foreign corporation may maintain an action of replevin to recover its personal property from one who has no contract relations with it and so has no standing to object to its doing business within the state without having complied with the statutes. (*Duroth Mfg. Co. v. Canfield,* 243 Pa. 24, 89 Atl. 798; *Emerson v. McCormick Machine Co.,* 51 Mich. 1, 16 N. W. 182.)


BUDGE, J.—This is an action in claim and delivery, brought by respondent to recover possession of about 5,045 pounds of seed beans.

The facts were stipulated in the trial court. Since prior to September 15, 1915, appellant has been the owner of the S.½ NE.¼ of sec. 6, T. 11 S., R. 17 E., B. M., in Twin Falls county, on which date he leased in writing said premises to one R. A. Norris, for the term beginning October 1, 1915, and ending October 1, 1916. The lease provides that:

"  . . . . and the said second party (Norris), in considera-
tion of the leasing of the above premises, hereby covenants
and agrees with the said party of the first part (appellant)
to pay the said party of the first part as rent for the same
as follows, to wit: one-half of all the crop or crops . . . .
grown on the above-mentioned land. Party of the second
part is to deliver the first party's share of the crop in Twin
Falls, Idaho, as soon as the same has been threshed . . . ."

Norris took possession of the premises under the lease, and
about April 1, 1916, made a written offer to respondent, as
follows:

"Twin Falls, P. O., Idaho State,
"April ——, 1916.

"Messrs. D. M. Ferry & Co.
    "Detroit, Michigan.

"I agree, on the terms and conditions stated below, to
raise for you, on lands of suitable quality and condition,
located in Section 6, Township of 11–17 East, County of
Twin Falls, and State of Idaho, and deliver to you at Twin
Falls, the following seeds, 12 acres beans, Black Valentine
(12 bushels seed).

"I agree properly to prepare and plant such lands with
stock seed to be furnished by you free on board cars at
Twin Falls, Idaho, properly to cultivate and care for the
crop, to harvest, cure, separate and clean, as well as pos-
sible with ordinary farm machinery, its entire seed product,
in such manner as to secure the greatest return of seed
suitable for seedman's use; and to sack and deliver all the
seed to you free on board cars at Twin Falls, Idaho, as soon
as the seed can be put in suitable condition, and before
November 30th, 1916, without wasting, feeding, selling, re-
serving or allowing any portion of the crop or seed furnished
to pass from my possession except as delivered to you. The
stock seed and seed crop produced from it is, and shall re-
main your property except as otherwise stated in this con-
tract.

"In order to prevent hybridization and to keep the crop
pure, I agree that during the life of this contract I will
not grow seeds of the same species for any other person, and

as far as I am able to prevent it, there shall be no other plants of the same species grown within ten rods of this crop. I will take at all times every reasonable precaution to keep the crop pure and to prevent seed of any chance plants of a different variety or of a stock of the same variety different from that sent me by you, becoming mixed with seeds grown under this agreement. You or your agents may at any time enter the field and at your own expense make such examinations, selections or rejections as you or they deem desirable for the betterment of the crop for seed purposes, and you or they shall not be liable for necessary damage, if any, to my crop resulting from such work.

"You are carefully to weigh and test the crop upon its delivery. Any remilling is to be done by you at your expense. You may refuse to accept the crop if less than eighty-five per cent (85%) of the seeds are vital, or if in your judgment the crop is in any other respect unfit for seedmen's use and cannot be made fit without an unreasonable amount of cleaning or hand picking. In case of dispute as to vitality, it is agreed that a sample of the seeds may be submitted to the United States Department of Agriculture for testing, and the report of the Department of Agriculture on the sample submitted shall be final and binding on both of us. The sample shall be taken from the seeds as they stand in your warehouse, by drawing a sample from each sack, then thoroughly mixing the same, and taking a sample from the mixture, which shall be sent by the ordinary course of mail or otherwise to the Department of Agriculture at Washington, D. C. In case you refuse to accept the crop, its title shall vest in me and I agree to reimburse you immediately for stock seed and bags furnished, and for all freight charges paid by you on such rejected crop. If, within 60 days after you mail me Notice of Refusal to accept the seeds, you do not receive directions from me as to their disposition, you may dispose of them as you wish.

"In consideration of the faithful carrying out of this agreement by me and as full compensation for my services, you are to pay me at the rate of (4¼) four and one-fourth cents per pound for all seed in excess of the stock seed

furnished me, delivered under this contract and accepted by you, payment to be made immediately upon your acceptance of the seed. No payment is to be made for any seed which you do not consider sufficiently pure, clean and dry for seedman's use and no credit is to be given for dirt, or for damaged or poor seed which has to be removed. In all cases, the screenings and culls are to remain the property of the party who separates them from the crop.

"If so requested in writing, you shall loan for my use free of charge, suitable bags for shipping the crop, and I agree to pay all transportation charges thereon; and you shall allow me full wholesale market value for all new, sound, undefaced, seamless cotton grain bags which I may put and you receive containing the crop.

"This letter when accepted by you shall constitute our contract, and be construed according to Michigan laws. There are no agreements or understandings regarding the subject matter of this letter other than expressed above.

"Yours truly,

"R. A. NORRIS."

"Accepted at Detroit, Michigan, this 10th day of April, 1916.

"D. M. FERRY & CO.

"By L. D. COULTER."

The above offer was accepted by respondent at Detroit, Michigan, April 10, 1916, and thereafter the seed was furnished by respondent to Norris, by whom it was planted on a portion of the leased premises. As the crop grown therefrom was being threshed, appellant took and retained one-half thereof in his possession, over the protest of respondent's agent, notwithstanding an oral offer by the latter to pay the contract price thereof and a demand for possession, and a subsequent written offer and demand, both of which were refused by appellant, who stored the property so taken in a warehouse at Twin Falls, from which it was taken by the sheriff under the writ of replevin issued in this action and delivered to respondent.

The cause was tried to the court without a jury. From a judgment awarding respondent possession of 4,606 pounds

of beans taken by defendant and costs of suit, the latter appeals, and makes two assignments of error, in which he contends that he was the owner of the property in dispute at the time of the commencement of this action, and that respondent is a foreign corporation doing business in this state and has failed to comply with the laws of this state regulating foreign corporations doing business here and therefore cannot maintain this suit.

The first and principal question presented in this case is whether respondent is the owner of the property here involved, and this must be determined from a consideration of the contract between it and Norris.

The supreme court of Montana in the case of *D. M. Ferry & Co. v. Forquer,* 61 Mont. 336, 202 Pac. 193, in construing a contract practically identical with the one here involved to be a contract of bailment rather than sale, said:

"The contract is one of bailment, and title to the seed and the crop produced was in the bailor. A bailment is a delivery of personal property in trust upon a contract, express or implied, that the trust shall be executed faithfully on the part of the bailee. 2 Bl. Com. 451; 2 Kent's Com. 558; Story on Bailments, sec. 2. . . . . The preponderant authority and better reasoning support the rule that upon the termination of the bailment, the identical thing bailed, or the product of or substitute for that thing, together with the increments, earnings, and gains which may have accrued to it during the period of the bailment, must be redelivered, delivered over, or accounted for by the bailee in accordance with the terms of the contract. 6 C. J. 1139. . . . . it is altogether immaterial whether the compensation of the bailee is fixed at a definite sum in money or is a share of the product itself, a share of the net proceeds of the adventure, a share of the increase, or is computed upon the product of the undertaking. 6 C. J. 1096."

A contract is to be construed so as to give effect to the intention of the parties making it. (*Tilden v. Hubbard,* 25 Ida. 677, 138 Pac. 1133; *Messinger v. Cox,* 33 Ida. 363, 194 Pac. 473), and it was the evident intention of the parties to this contract that respondent should have title to,

and be and remain the owner of, the seed and the seed crop produced from it, unless and until respondent refuse to accept the crop for reasons mentioned in the contract, and not until then would the relation of bailment cease and the title vest in the bailee. Upon the authority of *D. M. Ferry & Co. v. Forquer, supra,* and the cases therein cited, we therefore hold that respondent was the owner of the property here involved at the time of the commencement of this action.

In his second assignment, appellant seeks a reversal of the judgment herein under the provisions of C. S., sec. 4775, which provides that: "No contract or agreement made in the name of, or for the use or benefit of such (foreign) corporation prior to the making of such filings as provided in sections 4772 and 4773 can be sued upon or enforced in any court of this state by such corporation."

The respondent, however, is not seeking to enforce a contract in this action, and so far as the record shows no contract has ever existed between it and appellant. Sec. 4775, *supra,* has no applicability to an action by a foreign corporation to protect its property lawfully acquired.

In *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873, this court held that contracts entered into by a foreign corporation which has not complied with the provisions of C. S., secs. 4772 and 4773, are not void under the provisions of sec. 4775, *supra,* but that such corporation cannot maintain a suit in any of the courts of this state for a breach or violation of a contract entered into during the time the corporation failed to comply with the provisions of the statute. Respondent is not suing to recover for the breach or violation of a contract, but to protect its title to property, and the contract with Norris is important only in so far as it shows that the property was in fact the property of respondent. (*Junction Placer Min. Co. v. Reed,* 28 Ida. 219, 153 Pac. 564.) A foreign corporation, which has not complied with the provisions of secs. 4772 and 4773, *supra,* may sue in the courts of this state to recover possession of personal property, where such suit is not based upon a breach or violation of a contract made in its name or for its use or benefit.

From what has been said it follows that the judgment in this case should be affirmed, and it is so ordered. Costs are awarded to respondent.

McCarthy and Lee, JJ., concur.


(November 2, 1922.)

ON REHEARING.

BUDGE, J.—A petition for rehearing was granted in this case, and the matter was again fully presented by counsel. After a careful re-examination of the entire case we are unable to find any sufficient reason which would justify a change in the views of the court as heretofore expressed.

The former judgment of the court is therefore reaffirmed.

McCarthy, Dunn and Lee, JJ., concur.