(No. 5697.    October 8, 1931.)

WILBUR THIEL, Respondent, v. PACIFIC FRUIT AND PRODUCE COMPANY, a Corporation, Appellant.

[4 Pac. (2d) 356.]

James R. Bothwell and W. Orr Chapman, for Appellant.

A. J. Myers and Hodgin &·Hodgin, for Respondent.

LEE, C. J.—Plaintiff and respondent, Wilbur Thiel, entered into the following written contract with one Brown:

"This agreement made and entered into this 24 day of May 1928, by and between Albert Brown of Kimberly, Idaho, and hereinafter designated as the seller and Wilbur Thiel of Lemhi, Idaho, and hereinafter called the buyer, witnesseth:

"That said seller is to furnish 800 sacks of No. 1 seed potatoes, 105 pounds to the sack, and said buyer is to receive said potatoes and plant them and when dug this fall at the usual and regular digging time, he the said buyer will deliver to said seller, on board cars or warehouse, two sacks of said potatoes for each one furnished, and said potatoes delivered this fall to said seller shall be U. S. #1. Said buyer is to furnish all branded sacks.

"It is further agreed that said buyer shall pay the freight on said potatoes furnished now, and be allowed to deduct the same this fall. And it is further agreed that said

buyer will not charge for delivering said potatoes this fall to or on board the cars or warehouse, and same shall be delivered to the nearest railroad point or warehouse. Said seller to advise said buyer where to deliver said potatoes and said buyer to have five days notice in advance before making delivery.

"It is further agreed by and between the parties hereto that in event said buyer fails to carry out the terms of this agreement and does not plant the potatoes or neglects to properly care for and irrigate the same after planted, and that the same are damaged or destroyed by his negligence, then and in that event, he the said buyer shall be liable in damages to an amount equal to the market price of said potatoes at the time they should have been harvested or dug and delivered.

"In witness whereof the parties have hereunto signed their names the day and year first above written.

"(Signed)  WILBUR THIEL,
"Seller.
"(Signed)  ALBERT BROWN,
"Buyer."

Thereafter, in accordance with the contract, respondent delivered Brown 500 or 600 sacks of No. 1 seed potatoes. Some of them Brown planted on the "Bodenhamer" place, described as the N.½ of the SW.¼ of sec. 5, Tp. 10 S., R. 19 E., B. M., in Jerome county. Later, Brown made a written contract with appellant, Pacific Fruit & Produce Company, for the marketing of the crop, excepting therefrom "1200 sacks of potatoes to be returned for seed." Under such contract, appellant subsequently secured and sold all or a portion of the crop raised on the Bodenhamer place. Brown having failed to settle with respondent, the latter, claiming to be the owner of and entitled to the possession thereof, sued appellant produce company in claim and delivery, demanding possession of "1200 sacks of U. S. No. 1 potatoes grown and produced 'on said place by Brown' for the plaintiff." In case a delivery could not be had, respondent demanded the sum of $1440, the alleged,

actual value of the potatoes, together with $500 damages for their conversion. Trial was had without a jury, and the court found among other things that respondent, under the contract, furnished Brown "at least 500 sacks of seed potatoes," which were by the latter planted on the Bodenhamer land, with a resulting crop of 9,000 sacks; that under the contract, respondent "was entitled to and the owner of 1,000 sacks of U. S. No. 1 potatoes," that the potatoes in question were expressly excepted from Brown's contract with appellant, that the latter wrongfully and wilfully took possession of and sold all of the potatoes grown on the Bodenhamer land, retaining all proceeds therefrom, and that the reasonable market value of said 1,000 sacks of U. S. No. 1 potatoes was at the time $850. From these facts, the court concluded that respondent was entitled to recover judgment against appellant for $850, together with seven per cent per annum interest from and after April 30, 1929, and for his costs and disbursements. Judgment was accordingly entered; and appeal followed.

The determination of this cause rests solely upon the construction of respondent's contract with Brown. Appellant contends that the agreement is a simple executory contract whereby respondent undertook to sell Brown certain No. 1 seed potatoes for the consideration of Brown's promise to pay by delivering him, out of the crop produced from such seed, two sacks of U. S. No. 1's for each sack of seed furnished. On the other hand, respondent insists that the contract was one of bailment whereby respondent, as bailor, entrusted to Brown, as bailee, certain No. 1 potatoes to be planted and harvested so that the bailor would realize therefrom twice the original amount of the same strain, paying the bailee for his services such part of the prospective crop as might remain after the requisite number of sacks had been delivered to the bailor. In other words, appellant says there was a direct sale upon the promise of the buyer to pay the seller a stated purchase price, to wit, a certain number of sacked potatoes of a specified kind, grown from particular seed.

Under this construction, delivery by respondent would have immediately vested Brown with title and rendered not only the original seed but the entire crop grown therefrom subject to the claims of Brown's creditors. But, answers respondent, when one delivers another an article to which something is to be done by the latter and the thing or the products of it returned in due season, the former promising to pay the latter for the service, no title whatever passes: the owner has merely hired a workman who shall for the nonce handle the property in his own shop.

And, in support of this position, he cites numerous cases commonly termed "Seed Contract" cases, chief among which is that of *D. M. Ferry & Co. v. Smith,* 36 Ida. 67, 209 Pac. 1066, where this court held the contract to be one of bailment. A few excerpts from the contract under consideration in that case clearly show how the defendant therein bound himself to the furnisher of certain seed beans:

"I agree, on the terms and conditions stated below, to raise for you on lands of suitable quality located etc., and deliver you at, etc., the following seeds. . . . .

"I agree properly to prepare and plant such lands with stock seed to be furnished by you, etc., and to sack and deliver all the seed to you, etc., without wasting, feeding, selling, reserving or allowing any portion of the crop of seed furnished to pass from my possession except as delivered to you. The stock seed and seed crop produced from it is and shall remain your property except as otherwise provided in this contract. . . . .

"You may refuse to accept the crop, if less than 85% of the seeds are vital, etc. In case you refuse to accept the crop, its title shall vest in me. . . . .

"In case of the faithful carrying out of this agreement by me and as full compensation for my services, you are to pay me at the rate of 4½ cents per pound for all seed in excess of the stock seed furnished me."

Here, was clear recognition of the owner's title until deliberately divested, the hiring of the second party to do certain prescribed things, an obligation to deliver the owner

the proceeds of the things furnished, and a definite compensation promised for the service: nothing but a bailment was possible.

In the instant contract, there is no reservation of title. Appellant undertakes to pay by a delivery of a specified portion of the crop. To the possible excess of the crop, respondent asserts no claim whatever. He denominates himself the seller and Brown the buyer and makes no mention of paying Brown for any service. It is argued that Brown undertook to raise potatoes for respondent and as payment for his services was to be allowed the possible crop excess. Might it not as consistently be argued that he undertook to raise potatoes for himself, and, out of the potatoes so raised to devote a number of sacks to payment for the seed, since the seller thereof required payment in kind?

As to the compensation of the alleged bailee, respondent's contention at best is that the former was to receive an unknown, indefinite yet altogether assured excess of the crop, whatever that might be. If, after delivering respondent the requisite sacks, there should be no excess, obviously the raiser of the crop might find himself in sore straits. For, through no fault of his own, but on account of an act of God or unavoidable mishap, the excess might fail and the bailee receive no compensation for the service rendered. While respondent for his seed would have received full compensation, Brown for his labor would have received nothing at all, a situation certainly never contemplated by the parties but many times possible under the construction respondent contends for. Nor is it conceivable that respondent would contract to pay Brown 8,000 sacks for raising him 1,000. Yet that is just what the consideration would have actually been under the bailment theory.

That Brown so understood the agreement, respondent claims is evidenced by the former's excepting from his marketing contract with appellant the very potatoes in question. By its terms, the contract did except "1200 sacks of potatoes to be returned for seed." But, is there anything in such verbiage which indicates that a third party owned or had an interest in the potatoes to be returned? At most, it

could only indicate that someone had furnished Brown seed and that Brown proposed to return 1200 sacks of the crop therefor. Knowing that he had not paid for the seed and that he had promised to make payment in potatoes from this particular lot, what would have been more natural than to except them from appellant's contract?

The fact that the contract provided that, in case of a breach thereof, due to his own negligence, Brown should be liable in damages for the marketable value of the potatoes not forthcoming does not in any way tend to establish respondent's construction. Such damages would have been recoverable without the provision. We are satisfied that the agreement was a straight sale contract executory in its nature, that it was fully executed by respondent and that thereafter the relation existing between the parties was simply that of debtor and creditor.

Judgment reversed; costs to appellant.

Budge, Givens, Varian and McNaughton, JJ., concur.